NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1955-13T2

PANAGIOTI L. GIANNAKOPOULOS,

    Plaintiff-Appellant,

v.

MID STATE MALL,
MARK E. ZELINA, ENGINEER, and
MASER CONSULTING, P.A.,

    Defendants-Respondents.

_____

MASER CONSULTING, P.A.,

    Third-Party Plaintiff,

v.

YOKO KNOX,

    Third-Party Defendant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| December 31, 2014 |
| APPELLATE DIVISION |

Argued November 12, 2014 – Decided December 31, 2014

Before Judges Reisner, Koblitz and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5232-11.

Richard W. Wedinger argued the cause for appellant (Barry, McTiernan &

Wedinger, attorneys; Mr. Wedinger and Laurel A. Wedinger, on the briefs).

Nora Coleman (Haworth Coleman & Gerstman, LLC) argued the cause for respondent Mid State Mall.

Joseph T. Ciampoli argued the cause for respondents Mark E. Zelina and Maser Consulting, P.A. (Thompson Becker & Bothwell, L.L.C., attorneys; Mr. Ciampoli, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Plaintiff Panagioti L. Giannakopoulos appeals from a September 12, 2013 order granting defendant Mid State Mall's motion for reconsideration and dismissing plaintiff's complaint against MidState[1]. Plaintiff also appeals from a September 12, 2013 order granting summary judgment in favor of defendants Maser Consulting, P.A., and Maser engineer Mark E. Zelina (collectively, Maser). Plaintiff further appeals from a December 6, 2013 order denying his motion for reconsideration.

To summarize, we conclude that in reconsidering a prior judge's decision to reinstate plaintiff's complaint, the trial court misapplied the standards set forth in Rule 1:13-7(a). The trial court also erred in failing to hold a N.J.R.E. 104 hearing

---

[1] As discussed later in this opinion, defendant was misnamed in the complaint as Mid State Mall, when its corporate name is MidState Hye, L.P. We will refer to defendant as MidState.

to evaluate plaintiff's claim that he was entitled to tolling of the statute of limitations under N.J.S.A. 2A:14-21 due to his mental incapacity. Consequently, we reverse and remand for further proceedings consistent with this opinion.

I

We engage in de novo review of the trial court's decision on the summary judgment motion and the motion to dismiss. Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013). In fact, because the court considered documents outside the pleadings in deciding the latter motion, it is also treated as a summary judgment motion. R. 4:6-2(e); Jersey City Educ. Ass'n. v. City of Jersey City, 316 N.J. Super. 245, 254 (App. Div. 1998), certif. denied, 158 N.J. 71 (1999). Accordingly, we review the factual record in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). We review a judge's decision on a reconsideration motion for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). However, we owe no special deference to a trial judge's legal interpretations in deciding any motion. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Viewed through the lens of the applicable legal standards, these are the facts. On May 19, 2008, plaintiff suffered

horrendous and life-changing injuries when an automobile making a left turn out of the Mid State Mall parking lot struck plaintiff's motorcycle. At the time of the accident, plaintiff was proceeding past the mall with the right of way in his favor.

Two days after the accident, on May 21, 2008, plaintiff allegedly signed a durable power of attorney (POA) naming his brother as his fiduciary for all purposes relating to his property and finances. Among other things, the POA recited that in any future protective proceedings for his person or estate, plaintiff nominated his brother to serve as his guardian. The POA did not specifically authorize the brother to make decisions as to plaintiff's medical treatment. However, an August 5, 2013 certification from the brother attested that the POA was signed at the hospital's request so the brother could make medical decisions for plaintiff.[2]

---

[2] At his deposition, plaintiff was unable to positively identify his signature on the POA. Further, as noted later in this opinion, plaintiff's medical records indicate that he underwent extensive surgery on the day of the accident, May 19, 2008, and was in a coma for several months thereafter. It is possible that the coma was medically induced a day or two after the surgery and that plaintiff signed the POA in contemplation of being placed in the coma. That would be consistent with representations made to us at oral argument concerning plaintiff's intent to permit his brother to make medical decisions for him, and with the brother's August 5, 2013 certification.

Plaintiff never filed a lawsuit against the driver of the car that hit him. Due to the extensive injuries plaintiff suffered and the driver's obvious liability, her insurance company offered to pay its entire policy within a day or two after the accident. Because the settlement involved setting up special needs trusts for plaintiff and his young daughter, who was giving up any lawsuit rights she may have had in return for a portion of the settlement, a hearing was held in January 2009, before General Equity Presiding Judge Frank M. Ciuffani, who approved the settlement and the trusts.[3]

Plaintiff was not present at the friendly hearing. Plaintiff's then-attorney stated to Judge Ciuffani that his client was mentally competent, though severely physically incapacitated. Plaintiff's brother, who held his POA, testified that he managed plaintiff's affairs on a daily basis. He also testified briefly that he had discussed the proposed settlement with plaintiff, and that the reason the settlement included a special needs trust for the daughter was that plaintiff wanted to be sure that her needs were met. A finding that plaintiff was mentally incapacitated on the date of the friendly hearing would require a court to find that the attorney misrepresented

---

[3] Although the hearing resulted from a settlement reached without the filing of a personal injury lawsuit, we will refer to the proceeding as a "friendly" hearing. See R. 4:44-1; R. 4:44-3.

or overstated plaintiff's mental capacity, and that the brother either intentionally misstated plaintiff's cognitive ability or believed that plaintiff wanted what the brother thought was best for him, despite plaintiff's inability to make meaningful decisions. We discuss the facts relating to this issue later in this decision.

Over a year later, on May 19, 2010, plaintiff's then-counsel filed a complaint against MidState, alleging negligence in the configuration of the turning lane from which the auto driver had exited. That complaint was filed within the two-year statute of limitations. On May 27, 2010, the attorney filed an amended complaint naming several "John Doe" defendants but not describing them with any particularity; that amendment was filed beyond the two-year limitations period.

The attorney attempted service on MidState by Federal Express (FedEx). However, the package was addressed to the mall premises on Route 18 and Tices Lane in East Brunswick, rather than to the Paramus offices of the corporation that owned the Mall. A FedEx invoice dated June 14, 2010 reported "Incorrect recipient address," and reported that FedEx made a "1st attempt Jun 09, 2010 at 10:31 A.M." but the package was "undeliverable." However, the invoice also reported that the package was "Delivered" on "Jun 11, 2010 18:36." Hence, viewing this

A-1955-13T2

evidence in the light most favorable to plaintiff, the complaint was delivered to the mall premises.

However, MidState submitted evidence that its corporate owner never received the complaint. MidState submitted a certification of the Mall's property manager, attesting that the Mall was owned by a corporation called MidState Hye, L.P., with offices in Paramus. She stated that the mall consisted only of retail stores and there was "no central office for 'Mid State Mall' anywhere at the mall itself." She also attested that there was no location in the mall to leave packages addressed to Mid State Mall, other than one of the retail tenants, and that Midstate Hye, L.P. had never received a FedEx package containing plaintiff's May 19, 2010 complaint.

The complaint was dismissed for lack of prosecution on December 3, 2010. Instead of filing a motion to reinstate the original amended complaint, plaintiff's then-attorney filed a new complaint on July 19, 2011, naming as defendants MidState, Maser (misspelled as "Master") and its engineer, Zelina. Plaintiff's counsel served this complaint on MidState at its corporate offices on August 1, 2011. When MidState filed a motion to dismiss based on the statute of limitations, the attorney realized his mistake and filed a cross-motion to reinstate the original complaint.

In support of that motion and in opposition to the dismissal motion, plaintiff's then-attorney filed certifications in which he attested that his client had been incapacitated since the time of the accident. The attorney attested that due to plaintiff's injuries, he was "institutionalized at the Madison Center" in Old Bridge. The attorney submitted medical records which he contended showed his client's incapacity. Plaintiff also filed an October 30, 2011 expert report from Dr. Leon H. Waller, noting that the accident caused plaintiff to suffer a closed head injury with traumatic brain injury, mood disorder and cognitive dysfunction, along with a host of physical disabilities including paraplegia. Dr. Waller opined that the medications required to treat these conditions "by themselves diminish one's cognitive skills," thereby aggravating and compounding plaintiff's existing "underlying cognitive dysfunction as a direct result of the accident." Dr. Waller opined that plaintiff "did not possess the cognitive capacity to competently decide the course of his medical care or make decisions regarding his legal rights and representation."

Plaintiff's attorney also certified that MidState had been "successfully served" with the original complaint; he submitted documentation from FedEx confirming delivery. In response, MidState asserted that the original complaint was never

A-1955-13T2

personally served, and that service by FedEx was insufficient under Rule 4:4-3. MidState also contended that the medical records demonstrated that plaintiff was not mentally incapacitated, but MidState did not submit an expert report to contradict Dr. Waller's report.

The motion and cross-motion were heard before Judge Martin E. Kravarik on November 4, 2011. In contrast to what he told Judge Ciuffani, plaintiff's counsel told Judge Kravarik that the trust approved in the friendly settlement was negotiated and agreed to by plaintiff's brother Nick because plaintiff was incapable of making those decisions. The attorney told Judge Kravarik:

> [O]n certain occasions when he [Nick] did try to discuss any of these matters with his brother, his brother would become very emotional and incoherent. He is heavily medicated and will be so for the rest of his life.
>
> Suffice it to say that he is now struggling with the pain management and the continued addiction on these painkillers which is something that they give the patients regularly, unfortunately.
>
> . . . .
>
> . . . [T]he fact is that he wasn't making any decision with tubes down his body and in his mouth and through his nose, and he continues to be in a state where he does not make any decisions on his own behalf.

In an oral opinion, Judge Kravarik noted that the two-year statute of limitations, N.J.S.A. 2A:14-2, could be tolled by insanity and mental derangement, or lack of consciousness. See N.J.S.A. 2A:14-21. While expressing some concern for the possible prejudice to the defendant, the judge reasoned that it would be unjust to deny "a person who is mentally and physically incapacitated his day in court." Judge Kravarik explained that Judge Ciuffani's action in appointing a trustee for plaintiff supported plaintiff's contention that he was incapacitated. Judge Kravarik therefore held that the statute of limitations would be tolled to the date of the motion hearing, and appointed plaintiff's brother as his guardian ad litem "for the purpose of this suit since he's also the medical representative and trustee in equity." Judge Kravarik also reinstated the original complaint and deemed the second complaint as an amended complaint which related back to the initial filing of the first complaint.

However, the judge told defense counsel that if discovery revealed "that the relief granted was not warranted you may file an[] appropriate [m]otion for reconsideration." The judge also directed plaintiff's counsel to immediately provide defense counsel with full access to plaintiff's medical records. The court's ruling was memorialized in an order dated November 4,

2011. The judge later amended the order to provide that the statute of limitations was "tolled through April 4, 2012." Plaintiff served the amended complaint on Maser on February 6, 2012.

Following the motion before Judge Kravarik, plaintiff retained new counsel and the parties engaged in discovery on all issues. After the parties completed discovery, MidState filed a motion for reconsideration on or about August 6, 2013, and Maser filed a motion for summary judgment on the statute of limitations issue. In support of the reconsideration motion, which was to be heard by a second judge who was new to the case, MidState's counsel submitted the same materials that were presented to Judge Kravarik, plus the transcript of the hearing before Judge Ciuffani and portions of plaintiff's deposition.

During his deposition, plaintiff was able to answer questions, however, he could not remember the circumstances under which the original lawsuit was filed. He explained that "[b]ack then, after the coma, like after all that stuff happened I woke up. I was getting sick a lot and going to the hospital, going to a new nursing home. I was so out of it. You know, I was in so much pain. . . . And so I may have said stuff, but . . . a lot of stuff was blurry to me . . . at one point I tried to call my brother by dialing my cell phone. I was pushing my

hand and thinking that I would be able to call my brother. . . ." He also testified that he did not remember signing the POA naming his brother as his fiduciary.

Plaintiff's medical records, submitted in opposition to the reconsideration motion and Maser's summary judgment motion, indicated that plaintiff was conscious and alert immediately after the accident, but after surgery performed on May 19, 2008, he was "in a coma state for several weeks, on mechanical ventilation and parenteral nutritional support." It appeared that he did not fully emerge from the coma state until July 9, 2008, when he was weaned from the ventilator. However, he was noted to be heavily medicated and in intractable pain. Hospital records reflect that plaintiff's brother and father consented to various medical procedures on his behalf during May, June, and July 2008.

Plaintiff also submitted a second report from Dr. Waller dated July 15, 2013. Based on his examination of plaintiff, Dr. Waller opined that plaintiff remained incapacitated due to his severe neurological injuries. None of the defendants submitted any medical expert reports to contradict Dr. Waller's July 2013 report or his earlier report.

Plaintiff also submitted a certification from his brother Nick, dated August 5, 2013, explaining in great detail the

A-1955-13T2

extent of plaintiff's limitations. Nick attested that plaintiff signed a power of attorney shortly after the May 19, 2008 accident, as he was about to undergo surgery, and attested that plaintiff was then in a medical coma for months afterward. Nick's certification explained plaintiff's inability to make decisions, stated that he was lucid only sporadically, and attested that there was no intent to mislead Judge Ciuffani at the friendly hearing concerning plaintiff's mental condition. The brother stated: "If Peter was normal and competent he would not have needed a trustee and I would not have to take care of him. . . . From the day of the accident I have taken on the responsibilities for my brother's life and well[-]being which is a 24/7 obligation. . . . To this day Peter is not mentally competent or consistent. . . . [A]ny mental stress can cause him to become irrational and childlike. . . . When he is on dilaudid or recovering from it[,] these disabilities are even worse."

In an oral opinion, on September 12, 2013, the newly-assigned motion judge (hereafter, the "second judge" or "the judge") determined that plaintiff was competent at the time that his attorney appeared before Judge Ciuffani, "based on the representation of his attorney." In other words, regardless of plaintiff's medical proofs concerning his incapacity, the second

judge reasoned that plaintiff was bound by his former attorney's statement at the friendly hearing.[4] The judge also concluded that, even if plaintiff was incapacitated, once plaintiff retained an attorney to file a complaint on his behalf, the statute of limitations was no longer tolled by virtue of his incapacity. The judge reasoned "that in the alternative, if he was not competent, the fact that he had an attorney, not on a collateral matter, but on the direct matter which is in front of me now, would have created a running of the statute of limitations."

The judge considered that "[o]nce an incompetent person or those on his behalf engages an attorney, to handle a litigated matter, the statute begins to run. . . . You can't litigate in piecemeal against one defendant one day and another defendant another day. And a third defendant another day." The judge reasoned that <u>Unkert v. General Motors Corp.</u>, 301 <u>N.J. Super.</u> 583, 591 (App. Div.), <u>certif. denied</u>, 152 <u>N.J.</u> 10 (1997), was not on point, because in that case the plaintiff was represented by counsel on a different matter from the tort suit in which he claimed tolling of the limitations period.

---

[4] During the oral argument, the judge initially commented that the court might need to hold an evidentiary hearing under <u>N.J.R.E.</u> 104, to determine the competency issue. However, the judge apparently decided that such a hearing was not necessary.

The judge also concluded that the failure to successfully serve the complaint on MidState in 2010 defeated plaintiff's right to have the complaint reinstated in 2011. The judge reasoned that even if plaintiff's counsel made errors, "[a]ttorneys' negligence is no longer excused."[5] The judge also stated that defendants were prejudiced by the delay, without specifying the facts on which that conclusion was based.[6] On September 12, 2013, the trial court entered two orders dismissing the complaint, respectively, against MidState and Maser.

On October 3, 2013, plaintiff filed a motion for reconsideration of the second judge's September 12, 2013 orders. The motion included evidence supporting the merits of the underlying lawsuit, including the report of an engineering expert. Both sides submitted additional information concerning the FedEx service on MidState.

---

[5] As further discussed in Part IIA, infra, Rule 1:13-7(a) applies a good cause standard for reinstatement motions in single-defendant cases, but applies an exceptional circumstances standard in multi-defendant cases where at least one of the several defendants has been properly served. Based on the quoted language, we infer that the judge applied the exceptional circumstances standard.

[6] None of the defendants submitted legally competent evidence that the delay in serving the complaint caused them any actual prejudice in their ability to defend against the lawsuit.

In a written opinion dated December 6, 2013, the second judge denied plaintiff's reconsideration motion. The judge concluded that the motion was procedurally barred as to MidState, reasoning that Rule 4:49-2 prohibited the filing of a second reconsideration motion, even if filed by a different party than the one who filed the first reconsideration motion. The judge also found that failure to effectively serve the original complaint on MidState barred the court from finding that service of the second or amended complaint on Maser related back to the date of filing of the original complaint. The judge concluded that delivering the complaint to the mall was ineffective, because that was not MidState's correct business address and there was no proof that MidState received actual notice of the complaint as a result of that attempted service. This appeal followed.

## II

### A.

MidState and Maser stand in different procedural postures, because plaintiff filed a timely complaint against MidState, but filed the complaint against Maser more than a year beyond the two-year statute of limitations. We begin by considering the second judge's decision to grant MidState's reconsideration motion and dismiss the complaint against that defendant.

A-1955-13T2

We conclude that it was a mistaken exercise of discretion to dismiss the complaint against MidState.[7] There was no explanation for the lapse of just over a year between the attempted service on MidState and the filing of the second complaint. However, the original complaint was filed within the statute of limitations and could have been reinstated on motion, for good cause shown, even if plaintiff had not served MidState. See Baskett v. Kwokleung Cheung, 422 N.J. Super. 377, 384-85 (App. Div. 2011). Consequently, the former attorney's mistake in having the complaint served on Midstate at the mall's address instead of at Midstate's corporate headquarters, in itself, does not bar reinstatement.

The Rules are to be construed so as to do justice, and ordinarily an innocent plaintiff should not be penalized for his attorney's mistakes. See Baskett, supra, 422 N.J. Super. at 385; Weber v. Mayan Palace Hotel & Resorts, 397 N.J. Super. 257, 263 (App. Div. 2007). In applying the good cause standard for reinstating a complaint under Rule 1:13-7(a), "we are satisfied that, absent a finding of fault by the plaintiff and prejudice

---

[7] While it does not merit extended discussion, we also conclude the judge erred in finding that plaintiff's reconsideration motion was procedurally barred. Plaintiff was not guilty of filing repetitive reconsideration motions; rather, this was his first motion for reconsideration of an order dismissing his complaint. He had a right to file that motion under Rule 4:49-2.

to the defendant, a motion to restore under the rule should be viewed with great liberality." Ghandi v. Cespedes, 390 N.J. Super. 193, 197 (App. Div. 2007). Where, as here, there was no legally competent proof of prejudice to MidState from the delay in service, and no evidence that plaintiff was at fault, the interests of justice were not served by punishing this gravely injured, innocent plaintiff for his former attorney's evident inattention to this matter. Baskett, supra, 422 N.J. Super. at 385.

Moreover, the provision of Rule 1:13-7(a) requiring a showing of exceptional circumstances in multi-defendant cases does not apply here, because Maser was not added to the case until after the filing of the second complaint.[8] The higher standard in multi-defendant cases was intended to avoid delay where a case has been proceeding against one or more defendants, and the plaintiff then seeks to reinstate the complaint against a previously-dismissed additional defendant. See Pressler &

---

[8] The history of Rule 1:13-7(a) confirms that the exceptional circumstances standard was intended to apply only in multi-defendant cases. Baskett, supra, 422 N.J. Super. at 383-84 n.4. Moreover, by its terms, Rule 1:13-7(a) only requires a showing of exceptional circumstances in multi-defendant cases "in which at least one defendant has been properly served." According to MidState's evidence, that standard was not met at the time Judge Kravarik reinstated the complaint, because neither MidState nor Maser had been properly served.

Verniero, Current N.J. Court Rules, comment 1.2 on R. 1:13-7 (2015). Here, the Maser defendants were not even served with the amended complaint until after Judge Kravarik reinstated the original complaint. Hence reinstating the complaint against MidState did not cause the kind of delay the Rule was intended to prevent. Moreover, by the time MidState filed its motion for reconsideration, the parties had completed discovery and, but for the second judge's decision to dismiss the case, it could have proceeded to trial. Accordingly, we reverse the order dismissing the complaint against MidState and we direct that the complaint be reinstated.

## B.

Next, we address the complaint against Maser. Because it was filed out of time, and Maser had no prior notice of plaintiff's cause of action, the Maser complaint cannot relate back to the date of filing of the original complaint against MidState.[9] See R. 4:9-3; Walker v. Choudhary, 425 N.J. Super. 135, 143 (App. Div.), certif. denied, 211 N.J. 274 (2012). However, we conclude that the trial court mistakenly exercised its discretion by granting summary judgment for Maser, because viewing the facts in the light most favorable to plaintiff, he

---

[9] Even the May 27, 2010 amendment, which included "John Doe" defendants, was filed outside the two-year limitations period.

was mentally incapacitated as a result of the accident and the statute of limitations was tolled. N.J.S.A. 2A:14-21. Hence, we vacate the order granting summary judgment in favor of Maser and we remand for an evidentiary hearing on the tolling issue.[10]

The two-year statute of limitations for commencing a personal injury lawsuit, N.J.S.A. 2A:14-2, may be tolled by the plaintiff's mental incapacity:

> If a person entitled to commence an action or proceeding specified in N.J.S.A. 2A:14-1 to 2A:14-8 . . . is . . . a person who has a mental disability that prevents the person from understanding his legal rights or commencing a legal action at the time the cause of action or right or title accrues, the person may commence the action . . . , within the time as limited by those statutes, after . . . having the mental capacity to pursue the person's lawful rights.
>
> [N.J.S.A. 2A:14-21.]

The version of this statute in effect at the time of the accident referred to the person being "insane" rather than having "a mental disability." See L. 1951, c. 344. However, the term "insane" had been interpreted in a way that corresponds to the modern term "incapacity."

---

[10] Tolling would also be applicable to MidState as an alternate ground for reinstating the complaint against that defendant. Consequently, to protect its further appeal rights, MidState shall be permitted to fully participate in the hearing on remand.

For example, in <u>Sobin v. M. Frisch & Sons</u>, 108 <u>N.J. Super.</u> 99 (App. Div. 1969), <u>certif. denied</u>, 55 <u>N.J.</u> 448 (1970), we held that a tree trimmer who suffered a concussion in a fall, resulting in an extended period of unconsciousness, was thereby rendered "insane" for purposes of the statute. "Manifestly, the aim of <u>N.J.S.A.</u> 2A:14-21 is to relieve from the strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights." <u>Id.</u> at 104. We found that because the plaintiff "was in a mental condition which prevented him from knowing, and, a fortiori, understanding his legal rights" he was "insane" within the meaning of the statute. <u>Ibid.</u>; <u>See also Kyle v. Green Acres at Verona, Inc.</u>, 44 <u>N.J.</u> 100, 113 (1965) (defining insanity as "such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action"). Both lay and expert testimony is admissible to establish that a plaintiff is incapacitated for purposes of <u>N.J.S.A.</u> 2A:14-21. <u>Estate of Nicolas v. Ocean Plaza Condo. Ass'n, Inc.</u>, 388 <u>N.J. Super.</u> 571, 582 (App. Div. 2006). Therefore, the testimony of plaintiff's brother, as well as expert testimony, is admissible on that issue.

To obtain the benefit of <u>N.J.S.A.</u> 2A:14-21, ordinarily a plaintiff must be incapacitated at the time the cause of action

21                                                          A-1955-13T2

arises. However, there is an equitable exception where the accident itself causes the plaintiff to become incapacitated at a later time. "Thus, a defendant whose negligent act brings about plaintiff's insanity should not be permitted to cloak himself with the protective garb of the statute of limitations." Kyle, supra, 44 N.J. at 111. The trial court, sitting without a jury, should determine whether a plaintiff was incapacitated on or after the date of the accident and whether the incapacity resulted from defendant's acts.[11] Id. at 112. To ensure fairness to the defendant, the court must also determine "whether plaintiff's suit was started within a reasonable time after restoration of sanity or after the appointment of a guardian or committee who knew or should have known of the cause of action." Ibid.

In applying equitable principles concerning the statute of limitations, courts have emphasized

> that the effect of a statute of limitations is to deny access to our courts. Unswerving, mechanistic application of statutes of limitations would at times "inflict obvious and unnecessary harm upon

---

[11] We infer that this standard requires the judge to determine whether the plaintiff's later incapacity resulted from the accident, as opposed to from some other cause. We do not construe the standard as requiring the judge to decide whether the defendant was liable for the accident. To hold otherwise would require, in essence, a trial of the underlying tort suit before the case could go forward.

individual plaintiffs" without materially advancing the objectives they are designed to serve.

> [Jones v. Jones, 242 N.J. Super. 195, 203 (App. Div.), certif. denied, 122 N.J. 418 (1990) (quoting Galligan v. Westfield Centre Servs. Inc., 82 N.J. 188, 192 (1980)).]

Where there are material factual issues concerning a tolling claim, particularly issues concerning a plaintiff's mental state, the court should hold an evidentiary hearing. Id. at 202, 206; Estate of Nicolas, supra, 388 N.J. Super. at 582-83.

As previously noted, in deciding a summary judgment motion, the court must give the non-moving party the benefit of all favorable inferences that can be drawn from the evidence. See Agurto v. Guhr, 381 N.J. Super. 519, 522 (App. Div. 2005). We conclude the second judge erred in ignoring the legally competent lay and medical testimony as to plaintiff's incapacity, and instead basing the decision on the unsworn representation of plaintiff's counsel in the friendly hearing. At most, that representation, plus the brother's brief testimony at the same hearing, created a material dispute of fact as to plaintiff's mental capacity. Viewed in the light most favorable to plaintiff, the motion evidence was sufficient to establish that plaintiff was incapacitated for purposes of N.J.S.A. 2A:14-21.

Further, the doctrine of judicial estoppel was not properly applied to the attorney's unsworn representation in the friendly hearing, which was a non-adversarial proceeding intended to protect the interests of plaintiff and his minor daughter. See Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 562 (App. Div. 2007). "[J]udicial estoppel is an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 608 (App. Div. 2000), certif. denied, 167 N.J. 88 (2001) (citation omitted). Depriving this severely injured plaintiff of his day in court, due to his former attorney's unsworn representations made in a friendly hearing, would not serve the interests of justice or the purpose of the doctrine.

We also cannot agree that either the signing of the POA or the friendly hearing vitiated the tolling of the statute of limitations, if plaintiff was in fact rendered mentally disabled by the accident. We acknowledge language in Kyle stating that in applying the equitable exception for a plaintiff whose later incapacity was caused by defendants' actions, a court must consider "whether plaintiff's suit was started within a reasonable time after restoration of sanity or after the appointment of a guardian or committee who knew or should have

A-1955-13T2

known of the cause of action." Kyle, supra, 44 N.J. at 112 (emphasis added). Judge Ciuffani did not appoint a guardian of plaintiff's person or property, or a guardian ad litem, during the friendly hearing. Moreover, it appeared that the primary purpose of the friendly settlement was to determine the fairness of the settlement with respect to plaintiff's minor daughter, who was giving up any right she may have had to file a lawsuit against the driver in return for a portion of the settlement.

Nor did the friendly hearing result from litigation against the driver. Rather, it resulted from the insurance company's voluntary offer of its entire policy. Hence, the second judge's reasoning, that the limitations period was not tolled because plaintiff had an attorney "working for him," is not persuasive to us. The friendly hearing was not the equivalent of the later personal injury suit. The record does not indicate how, when, or by whom the original attorney was retained to file the lawsuit against MidState. However, a guardian ad litem was not appointed for plaintiff until Judge Kravarik entered the order on November 4, 2011.

In Unkert, we held that the appointment of a guardian did not vitiate an incapacitated plaintiff's right to the tolling provided by N.J.S.A. 2A:14-21, where the plaintiff was incapacitated contemporaneously with the accident. Supra, 301

N.J. Super. at 590-93. Likewise, we held in Nicholas: "It follows . . . that if the tolling provision is not terminated on the appointment of a guardian for an incompetent person, the tolling provision is not terminated for a person who acts as a caretaker for an insane person, without formal appointment as a guardian." Supra, 388 N.J. Super. at 584. Unkert concerned a plaintiff who was rendered incapacitated at the moment of the accident, rather than at a later time as happened in Kyle. In Nicholas, the plaintiff already suffered from dementia when her cause of action arose.

In this case, it is premature even to decide whether Kyle or Unkert applies, because the record is incomplete. Further, depending on the facts found after a N.J.R.E. 104 hearing, it may not matter whether plaintiff became instantly incapacitated when the accident occurred, or whether he became incapacitated later that day or two days later. Even if plaintiff signed a durable POA in favor of his brother, it is not clear for what purpose plaintiff signed the POA, if in fact he signed it at all. It is not clear whether he had sufficient mental capacity when he signed the POA to understand that he was authorizing his brother to file lawsuits on his behalf, or whether the two of them believed plaintiff was only signing consent for the brother

to make medical decisions for him.[12]  See <u>Kisselbach v. County of Camden</u>, 271 <u>N.J. Super.</u> 558, 564-66 (App. Div. 1994).

Given the other mistakes made by plaintiff's former attorney, we have no confidence that plaintiff or his brother were properly counseled as to the purpose of the POA or that plaintiff, who had suffered massive injuries including paralysis and brain damage, was in any condition to understand the rights he was giving his brother under the broad wording of the POA. Finally, as Maser's counsel candidly conceded at the oral argument of this appeal, there is no legally competent evidence of any prejudice from the delay in filing or serving the complaint against Maser.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[12] As we have recognized in another context, there can be gradations of incapacity, and a person who is incapable of making some life decisions may be capable of making other decisions. See <u>In re M.R.</u>, 135 <u>N.J.</u> 155, 169 (1994). Hence, a person who is gravely injured, in intractable pain, and about to be placed into a medical coma, may be capable of understanding that he needs a relative to make medical decisions for him but may have no ability to focus on or make informed decisions about who should manage his property interests.