**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3894-17T1
     A-4078-17T1

SALVATORE H. DIDIO,

  Plaintiff-Appellant,

v.

ORTHOPAEDIC AND SPORTS
MEDICINE, LLP, and DR. YAIR
D. KISSIN, M.D.,

  Defendants,

and

 KRISTY SAWICKI, P.A.,

  Defendant-Respondent.

_____

SALVATORE H. DIDIO,

  Plaintiff-Respondent,

v.

ORTHOPAEDIC AND SPORTS
MEDICINE, LLP, and DR. YAIR
D. KISSIN, M.D.,

Defendants,

and

KRISTY SAWICKI, P.A.,

Defendant-Appellant.
_____

Submitted February 26, 2019 – Decided March 22, 2019

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8030-15.

Donna H. Clancy, attorney for appellant Salvatore H. Didio in A-3894-17 and respondent Salvatore H. Didio in A-4078-17.

Rosenberg Jacobs Heller & Fleming, PC, attorneys for respondent Kristy Sawicki, P.A. in A-3894-17 and appellant Kristy Sawicki, P.A. in A-4078-17 (Douglas F. Ciolek, of counsel and on the briefs).

PER CURIAM

In this medical negligence action, plaintiff Salvatore H. Didio appeals from the April 6, 2018 Law Division order dismissing his complaint against defendant Kristy Sawicki, P.A., a physician's assistant (P.A.), on the basis that

it was filed after the statute of limitations had run.[1] Plaintiff contends the motion judge erred in determining the accrual date of his cause of action and in failing to conduct a Lopez[2] hearing. Defendant appeals from an earlier trial court order restoring plaintiff's complaint and reopening discovery.[3] We affirm the order dismissing plaintiff's complaint, and dismiss defendant's appeal as moot.

I

We review the pertinent facts. On August 28, 2013, plaintiff received Gel One shots into his knees from defendant, to "relieve some of the pain in [his] knee making it easier for him to walk" during an upcoming vacation. Defendant began by cleaning plaintiff's right knee with alcohol. She then removed a pen from her jacket pocket, causing plaintiff to ask, "What are you going to do with that pen? Are you going to write on my knee?" Defendant responded that she

---

[1] Plaintiff's complaint also named Orthopaedic and Sports Medicine, LLP and Dr. Yair D. Kissin, M.D. as defendants. Since the claims against those defendants were previously dismissed, and plaintiff does not challenge their dismissal, we refer to P.A. Sawicki as defendant.

[2] Lopez v. Swyer, 62 N.J. 267 (1973).

[3] Since the parties' appeals were scheduled back-to-back on the same calendar, we consolidate them for purposes of this opinion. Defendant's brief states she withdraws her appeal as moot if this court affirms the order dismissing plaintiff's complaint.

A-3894-17T1

was going to press the pen in a closed position to make an indentation, marking the spot where she would make the injection. Plaintiff's wife inquired about the use of an imaging machine during the administration of the injection, and defendant stated it was unnecessary. After defendant made the indentation with the pen, she administered the injection. At his deposition, plaintiff stated he did not feel "anything except for the needle going in."

Defendant then followed the same procedure and administered an injection into plaintiff's left knee; however, this time plaintiff "felt pain" and "the gel going around the joint." Plaintiff asked defendant "why [he] felt the fluid going in, the gel going around [his] knee, and [why he] did not experience that with the right knee." At their depositions, plaintiff and his wife both stated that defendant said nothing in response to the question.

Plaintiff was able to arrive and leave the office without any assistance. Later that evening, however, plaintiff's "right knee started swelling up and started to get pain in it." Plaintiff at first "thought that [it] was normal" because defendant "told [him] it would stiffen up," "[b]ut by the next day it was unbearable."

On August 30, 2013, plaintiff returned to defendant's office on crutches because he could not put weight on his swollen right knee. Dr. Kissin removed

80 cc's of liquid from the knee, and stated that it looked like blood. According to plaintiff, Dr. Kissin stated that the removal of fluid "should alleviate the pain, [and he] should have no more problems." At this time, plaintiff "asked why [the knee] was so red[,] and [defendant] said she may have nicked a vein when she gave [p]laintiff the shot." Plaintiff's wife again mentioned the imaging machine, thinking that it would have avoided such a problem; in response, defendant stated "they don't use it in this office."

Over Labor Day weekend (August 31 to September 2, 2013), plaintiff and his wife considered going to the emergency room because of continuing pain; however, Dr. Kissin advised against it. According to plaintiff, "He was afraid of them giving me an infection." On September 3, plaintiff returned to defendant's office "in severe pain, his knee was very swollen again, and he could[ not] put any pressure on it or walk on it." Dr. Kissin removed another 80 cc's of fluid from the knee, and this time "a creamy," "cloudy," and "milky" color was extracted. Dr. Kissin stated that it could be an infection, which would require surgery to have it "washed out." The specimen was sent to Quest Diagnostics for testing.

Seeking a second opinion, plaintiff went to Dr. Gregory Montalbano's office on September 4. Dr. Montalbano's associate, Dr. Daniel Savino,

5

apparently received "some results" from Quest "showing that it was already a possible septic staph infection." The next day, plaintiff returned to see Dr. Montalbano, who "was able to retrieve more of the results and told [plaintiff] that [he] would definitely need . . . surgery to clear the infection." Dr. Montalbano performed the surgery that Friday, September 6, 2013. Plaintiff remained in the hospital for the next five days. Since "the infection was very severe and the [first surgery] didn't help enough," plaintiff underwent a second surgery on September 20, 2013, and remained in the hospital for another five days.

In their depositions, plaintiff and his wife stated that none of the doctors involved speculated as to the cause of plaintiff's infection. However, they both stated that they thought it was caused by defendant's injection of the gel shot. During her deposition, plaintiff's wife stated that plaintiff "had gotten a severe infection from the way that the shot was administered . . . ." The following colloquy then occurred:

> Q.  Did any of your husband's treating physicians tell you that his infection was from the gel shot initiated by [defendant]?
>
> A.  I don't recall.

A-3894-17T1

Q. Okay. What information, if any, do you have for stating that his severe infection was from her injection?

A. Just from general knowledge, to know that you should not have something taken out of your pocket and put on someone else's skin that you're administering a shot to.

Q. Okay. This is your general knowledge?

A. Yes.

. . . .

Q. Would it be fair to say that back when you saw Dr. Kissin on September 3[], 2013, you were thinking that this issue your husband was having was from the gel injection?

A. Yes.

Q. Did you have that discussion with your husband at that time, that you thought that his issue on September 3[], 2013, [was] due to the gel shot?

A. Yes.

On September 9, 2015, plaintiff filed the malpractice action under review, claiming that defendant "failed to properly administer" the Gel One shot into his right knee, causing it to become inflamed, and require surgery.

Following oral argument, the motion judge granted defendant's motion for summary judgment, dismissing plaintiff's complaint on the basis that his claim

7

was barred by the statute of limitations. The judge found that during the initial procedure, plaintiff questioned "defendant's use of [the] pen to make a mark on the sterilized knee[,] and [he] was aware that she had done that with an unsterile instrument." Plaintiff soon experienced "excruciating pain," returned to defendant's office multiple times, and

> continued to suffer problems [when] on . . . September 3[] milky fluid was removed. He was aware on or before September 3[] that there was a possible infection and . . . on September 4[] . . . . he saw Dr. Montalbano's associate, Dr. Savino, [who] informed . . . plaintiff that it was a possible staph infection . . . .
>
>     . . . .
>
> [O]n the date of the procedure . . . plaintiff suspected that what . . . [defendant] was doing was not correct. And combined with the immediacy of the infection I do find that the statute started to run not later than September 3[] . . . .

## II

A two-year statute of limitations applies to claims for personal injuries. N.J.S.A. 2A:14-2; Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 610, (App. Div. 2014). A cause of action for medical malpractice generally accrues on the date of the alleged negligent act or omission. Szczuvelek v. Harborside Healthcare Woods Edge, 182 N.J. 275, 281 (2005).

A-3894-17T1

Statutes of limitations create repose and are "practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his [or her] defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." Fox v. Millman, 210 N.J. 401, 415, (2012) (quoting Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314 (1945)). When the statute of limitations expires before a plaintiff "[knows] or [has] reason to know that he [or she] has a cause of action against an identifiable defendant . . . the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play." Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973).

To accommodate those considerations, our Supreme Court adopted the discovery rule. Fernandi v. Strully, 35 N.J. 434, 450 (1961); see also Szczuvelek, 182 N.J. at 281; Graves v. Church & Dwight Co., 115 N.J. 256, 257 (1989). The discovery rule postpones accrual of a cause of action until "the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim." Szczuvelek, 182 N.J. at 281 (alteration in original) (quoting Lopez, 62 N.J. at 272 (internal quotation marks omitted)); see also Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001) ("The question in a discovery rule case

is whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.").

When determining whether the injured party had knowledge of fault, the law does not require that the person have a provable claim or even that the person be aware of facts to suggest that fault is "probable," rather all that is required is that the person be aware of facts which suggest the "possibility" of wrongdoing. Savage v. Old Bridge-Sayreville Med. Group, PA, 134 N.J. 41, 248 (1993).

> [K]nowledge of fault for purposes of the discovery rule has a circumscribed meaning: it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct <u>may</u> have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care.
>
> [<u>Ibid.</u>]

Here, plaintiff and his wife had suspicions regarding defendant's care during the injection, as plaintiff questioned her on pressing the unsterile pen onto his sterilized knee, while plaintiff's wife suggested the use of an imaging machine during the administration of the injection. Plaintiff experienced severe pain as early as the evening of the day he received the shot. Two days later, defendant stated that she "may have nicked a vein" in plaintiff's knee. After removing 80 cc's of liquid from the knee that day, Dr. Kissin stated it should

alleviate the pain, with no more problems. However, later that evening and throughout the weekend, plaintiff continued to suffer severe pain, and considered going to the emergency room.

On September 3, after removing another 80 cc's from the knee – this time revealing "milky," "creamy," and "cloudy" liquid – Dr. Kissin stated it could be an infection, which would require surgery to wash it out. The next day, plaintiff visited Dr. Montalbano's office, and learned it was a possible septic staph infection. Dr. Montalbano saw the knee on September 5, and determined that a washout surgery was needed – the first surgery taking place September 6.

Significantly, plaintiff's wife stated in her deposition that she and plaintiff discussed that they thought plaintiff's problems were caused by the gel shot "before [they] saw Dr. Montalbano" on September 4. On September 5, Dr. Montalbano concluded that plaintiff needed surgery. It is therefore clear that plaintiff and his wife were aware of material facts relating to the existence and origin of his injuries by September 3, and certainly no later than September 5, significantly before the September 9 filing of plaintiff's complaint two years later. Since we reach this conclusion while accepting everything plaintiff and his wife said at their depositions as true, and while reviewing the record in a light most favorable to plaintiff, we reject plaintiff's contention that the trial

11

court erred in declining to conduct a <u>Lopez</u> hearing.  <u>See</u> <u>Lopez</u>, 62 N.J. at 275 (holding that "[w]here credibility is not involved" in resolving application of the discovery rule, "affidavits, with or without depositions, may suffice").

To the extent not specifically addressed here, plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

The trial court's summary judgment order is affirmed.  Defendant's appeal is dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3894-17T1