**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5320-18

ROSS MILLER,

    Plaintiff-Appellant,

v.

GOLDEN NUGGET ATLANTIC
CITY, LLC, d/b/a GOLDEN
NUGGET ATLANTIC CITY,
JOSEPH FIERRO, JORDAN
KRAUS, JOSH GOMEZ,
WALTER JOHNSON, THOMAS
E. MURRAY, WALTER
CHARLESTON, JR., FRANK
JULIAN, and LANDRY'S INC.,

    Defendants-Respondents.

_____

Submitted October 26, 2020 – Decided July 28, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3019-17.

Broege, Neumann, Fischer & Shaver, LLC, attorneys for the appellant (David E. Shaver, on the briefs).

Yankwitt, LLP, attorneys for respondent Golden Nugget Atlantic City, LLC (George C. Godfrey, III, on the brief).

PER CURIAM

Plaintiff Ross Miller appeals from two orders of the Law Division dated June 28, 2019, which collectively grant summary judgment to defendant Golden Nugget Atlantic City, LLC (GNAC) on all of Miller's tort claims arising from his early morning encounter with security personnel at an Atlantic City hotel casino. We affirm.

## I.

The following facts are derived from the record. Miller is a self-proclaimed advantage player and skilled gambler who has the ability to count cards while playing blackjack. On August 17, 2015, he arrived at the Golden Nugget Atlantic City Hotel & Casino. The hotel casino is owned and operated by GNAC.

At about 4:00 a.m., Miller was in the casino's high-limit blackjack area. He observed three blackjack tables staffed by dealers. Miller attempted to place a wager at each table, but the dealers told him the tables were reserved and that he could not play. Miller expressed his belief that the reserved table

designations were a pretext to deny him the chance to gamble because of his status as a card counter.

At the last table at which he sat, Miller refused to leave his seat when asked and attempted several times to place a wager. Ultimately, defendant Joseph Fierro, GNAC's Casino Games Pit Manager, was called to the area. He asked Miller to leave the table at which he was sitting. After Miller refused to leave, Fierro instructed him to leave the casino floor, noting he was bothering other guests, several of whom had lodged complaints about Miller's behavior. Miller refused to leave.

Additional GNAC's security personnel arrived during the encounter. Miller was advised that he was formally evicted from the hotel casino and that if he remained on the property he would be charged criminally with defiant trespass. He refused to leave. The security officers attempted to place Miller in a controlled escort from the premises. Miller, however, resisted and became physically combative, flailing his arms and kicking. After bringing Miller to the carpeted floor, security personnel placed him in handcuffs and escorted him to a holding room at the hotel casino. They contacted the Division of Gaming Enforcement ("DGE"), which sent a State Trooper detective to the scene. Video

surveillance cameras at various locations in the hotel casino, including in the holding room, recorded these events.

Criminal complaints were issued against Miller alleging assault, contrary to N.J.S.A. 2C:12-1(a), and defiant trespass, contrary to N.J.S.A. 2C:18-3(b)(1). Defendant Josh Gomez, GNAC Security Manager, is the complaining witness on the assault complaint and defendant Jordan Kraus, a GNAC employee, is the complaining witness on the defiant trespass complaint. Each signed their respective complaints. The DGE detective appears to have witnessed the signatures. After service of the criminal complaints, Miller was released from handcuffs and removed from the hotel casino property without incident.

Miller pleaded not guilty to both criminal charges. When the matters were scheduled for trial in municipal court no witnesses appeared to prosecute the charges. As a result, the court dismissed both charges with prejudice.

On August 11, 2017, Miller filed a complaint in the Law Division against Landry's, Inc. (Landry's), which he alleged to be the owner of GNAC, GNAC, Fierro, Kraus, Gomez, and four other GNAC employees: Walter Johnson, Thomas E. Murray, Walter Charleston, Jr., and Frank Julian. He alleged: (1) malicious prosecution against Landry's, GNAC, and Gomez; (2) negligent supervision against Landry's and GNAC; (3) assault and battery against Fierro,

Kraus, Gomez, and the other GNAC employees; (4) conspiracy against all defendants; (5) intentional infliction of emotional distress against all defendants; (6) false imprisonment against all defendants; and (7) breach of the duty of public accommodation against Landry's, GNAC, and Julian.

Miller served the complaint only on GNAC. On January 6, 2018, the trial court issued a notice warning Miller that on March 6, 2018, it would dismiss the complaint against Landry's and the individual defendants for lack of prosecution without prejudice, pursuant to Rule 1:13-7 and Rule 4:43-2, unless Miller served those defendants with the complaint before that date.[1]

On March 8, 2018, GNAC's counsel filed a substitution of attorney identifying himself as counsel for all of the defendants, including the individual defendants who had not been served with the complaint.

On March 10, 2018, the trial court issued an administrative order dismissing without prejudice the complaint against the individual defendants for lack of prosecution.

On June 13, 2018, the dismissal of the complaint against the individual defendants was raised before the court at a case management conference. On

---

[1] On January 22, 2018, the trial court issued an order dismissing the complaint against Landry's for failure to allege a cause of action upon which relief could be granted. Miller did not appeal that order.

A-5320-18

that day, the court issued an order directing Miller to serve the complaint on the individual defendants on or before July 13, 2018. Miller did not thereafter effectuate service of the complaint on the individual defendants.

On March 1, 2019, GNAC moved for summary judgment on the malicious prosecution claim. The notice of motion was also filed on behalf of Gomez, even though the complaint against him had been dismissed almost a year earlier. While the motion was pending, on May 24, 2019, GNAC and Gomez filed a motion for summary judgment on the remaining claims.

On June 21, 2019, the trial court heard oral argument on both motions. At oral argument, GNAC's counsel informed the court that he had not realized until that morning that Miller failed to serve the complaint on the individual defendants after the June 13, 2018 conference. He argued that without the individual defendants in the case, the court was compelled to dismiss the assault and battery claims, which were alleged only against the individual defendants, and the conspiracy claims against GNAC because that defendant could not conspire with itself.

The court granted Miller leave to file a supplemental brief on the service issue. In the supplemental submission, Miller's counsel stated that he reviewed his files and discovered that after the June 13, 2018 conference, he had prepared,

A-5320-18

but failed to serve, summons and complaints for the individual defendants. He argued, however, that he and GNAC's counsel had been handling the matter as if the March 10, 2018 administrative dismissal had not taken place. He urged the court to set aside the dismissal of the complaint against the individual defendants in the interest of justice.

GNAC opposed reinstatement of the complaint against the individual defendants, arguing that Miller failed to seek reinstatement within ninety days of dismissal and was, therefore, required to demonstrate exceptional circumstances warranting relief. See R. 1:13-7(a). He argued, in effect, that counsel's oversight was not an exceptional circumstance.

On June 28, 2019, the trial court issued a comprehensive oral opinion declining to reinstate the complaint against the individual defendants, granting GNAC's motions for summary judgment, and dismissing the complaint in its entirety. With respect to reinstatement of the complaint, the court found that Miller had not made a formal motion for reinstatement, which precluded the award of relief. In addition, the court concluded that even if a motion had been made, the record did not demonstrate exceptional circumstances warranting reinstatement. Miller offered no explanation for having failed to effectuate service on the individual defendants either initially after the complaint was filed,

after the January 5, 2018 notice, within sixty days of the March 10, 2018 dismissal, or within the additional time allowed in the June 13, 2018 order.

The trial court also concluded that GNAC was entitled to summary judgment on the malicious prosecution claim because Miller failed to prove three elements of that cause of action. First, relying on our holding in Myrick v. Resorts International Casino & Hotel, 319 N.J. Super. 556 (App. Div. 1999), the court found that it was DGE, not GNAC or its employees, that put the prosecution of Miller in motion. The court concluded that the record clearly establishes that a DGE "detective arrived on scene, investigated the incident, and then he made the decision to place [Miller] under arrest."

Second, the court found that even if GNAC or its employees initiated the criminal process, Miller provided no evidence of malice other than his own opinion. As the court explained, "[a] review of the security footage . . . shows [Miller's] hostile and aggressive behavior towards defendants in defendants['] attempt to remove [him] from the casino floor. There's no evidence in the record that defendants committed any wrongful act."

Third, the court concluded Miller failed to establish an absence of probable cause to charge him with the criminal offenses. In light of the surveillance video, the court concluded that even if GNAC's employees initiated

Miller's criminal prosecution they had reasonable grounds to believe he committed defiant trespass and assault. The court rejected Miller's argument that the injuries he alleges to have suffered in the scuffle with GNAC security personnel are evidence of an absence of probable cause.

With respect to the negligent supervision claim, the court found that Miller produced no evidence other than his opinion that GNAC breached a duty of care to Miller or failed to train or supervise its employees. The court noted that Miller did not name a security expert during discovery and, although he claimed to have not received GNAC security manuals and written procedures during discovery, he failed to move to compel the production of those materials.

With respect to the assault and battery claim, the court found that Miller:

> has not introduced any evidence to support the assertion that [GNAC] or any of its personnel intended to cause a harmful or offensive contact or the imminent apprehension of such a contact. In fact, the video evidence submitted by [Miller] establishes the opposite. It's apparent the defendants attempted to avoid making any physical contact with [Miller] and did so only in response to his disruptive actions.
>
> As such, [Miller] has failed to establish his assault and battery claim. This claim also fails as a matter of law because the individuals are no longer in this case . . . .

The court noted that to prove his civil conspiracy claim, Miller must prove a combination of two or more persons acting in concert to commit an unlawful

9

act or a lawful act by unlawful means. The court observed that the chief element of the claim is proof of an agreement between the parties to inflict a wrong against or injury upon another and an overt act that damages that person. Miller must establish a single plan, the essential nature and general scope of which is known to each person in the conspiracy. The court concluded Miller

> has failed to establish any element of a conspiracy claim. [He] has not introduced any evidence the defendants entered into any agreement to do any wrong or injury to [him]. Again the only evidence offered by [Miller] is in the form . . . of the surveillance video, which shows [GNAC] personnel working to subdue [Miller] in line with casino regulations after he became disruptive, but does not support [Miller's] claim that defendants worked together to harm [him] or to carry out any unlawful acts.

> As such, the conspiracy claim must also fail as a matter of law. Also, with the absence of any individual defendants having committed any conspiracy, it's unclear how [Miller] will be able to prevail . . . .

With respect to Miller's claim of intentional infliction of emotional distress, the court concluded that he failed to produce any evidence of conduct by GNAC or its employees that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized society. The court also found that Miller produced no proof of having suffered emotional or mental harm as a result

10

of GNAC's actions, given that he relied only on his deposition testimony that he was upset after his encounter with GNAC employees at the hotel casino.

The court concluded that Miller could not establish his false arrest claim because the record contained no evidence that GNAC's employees lacked good cause for Miller's arrest and detention. The court found the video surveillance evidence clearly demonstrated that Miller engaged in disruptive and physically aggressive behavior when GNAC employees attempted to remove him from the hotel casino after his refusal to leave the property.

Finally, the court found that there was a complete absence of evidence in the record supporting Miller's claim of a breach of the duty of public accommodation. The court noted that GNAC, having opened its casino to the public, may not exclude patrons merely because they are likely to be successful gamblers. However, the court relied on long-established precedent allowing a casino operator to remove a patron whose actions disrupt the regular and essential operations of the business or threaten the security of the premises and other patrons. See Uston v. Resorts Int'l Hotel, Inc., 89 N.J. 163, 173 (1982) The court found that

> it is clear from the video footage submitted that [Miller] was acting in a manner that disrupted the regular and essential operations of the premises or threatened [the] security of the premises and its occupants as [Miller]

11

was refusing to exit restricted areas, disturbing other patrons, and aggressive toward security personnel.

As such, defendants acted reasonably when they removed [Miller] from the casino. And, therefore, the claim is also without merit.

As a result of these conclusions, the court entered two June 28, 2019 orders collectively granting summary judgment in favor of GNAC on all claims and dismissing the complaint with prejudice.[2]

This appeal follows. Miller raises the following arguments.

POINT ONE

SUMMARY JUDGMENT DISMISSING [MILLER'S] COMPLAINT WAS ERRONEOUSLY GRANTED.

POINT TWO

THE TRIAL COURT ERRED BY NOT FINDING EXTRAORDINARY CIRCUMSTANCES TO JUSTIFY VACATING THE ADMINISTRATIVE ORDER OF DISMISSAL.

II.

Rule 1:13-7 (a) provides that where an action of the type brought by Miller has been pending for four months without the filing of proof of service of the complaint on any defendant the court shall issue a notice indicating that the

_____

[2] GNAC filed a counterclaim against Miller. We have not been given an order dismissing the counterclaim but assume it has been abandoned by GNAC.

complaint will be dismissed without prejudice in sixty days unless proof of service is filed. If proof of service is not filed within that time, the court shall dismiss the complaint without prejudice against the defendant who has not been served.

If the defendant is served with the complaint after it has been dismissed without prejudice, the court may reinstate the complaint upon the filing of a consent order or by motion. The rule provides that

> [i]n multi-defendant actions in which at least one defendant has been properly served, the consent order shall be submitted within [sixty] days of the order of dismissal, and if not so submitted, a motion for reinstatement shall be required. The motion shall be granted on good cause shown if filed within [ninety] days of the order of dismissal, and thereafter shall be granted only on a showing of exceptional circumstances.
>
> [R. 1:13-7(a).]

We have defined exceptional circumstances in another context as denoting "something unusual or remarkable." Rivers v. LSC P'ship, 378 N.J. Super. 68, 78 (App. Div. 2005). The standard in multi-defendant cases is "intended to avoid delay where a case has been proceeding against one or more defendants, and the plaintiff then seeks to reinstate the complaint against a previously-

dismissed additional defendant." Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 609 (App. Div. 2014).

"Our review of an order denying reinstatement of a complaint dismissed for lack of prosecution proceeds under an abuse of discretion standard." Baskett v. Cheung, 422 N.J. Super. 377, 382 (App. Div. 2011). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Our review of the record reveals no mistaken exercise of the trial court's discretion when it declined to reinstate the complaint against the individual defendants. We agree with the trial court's conclusion that Miller did not establish extraordinary circumstances warranting reinstatement of the complaint. On January 6, 2018, Miller was notified of his failure to serve the complaint on the individual defendants. He did not effectuate service within sixty days after that notice. On March 10, 2018, Miller was notified the court had dismissed without prejudice the complaint against the individual defendants. He took no steps to serve the complaint on those defendants or to move for its reinstatement in the ninety-day period established in Rule 1:13-

7(a). On June 13, 2018, more than ninety days after the dismissal of the complaint against the individual defendants, the court gave Miller an additional thirty days to serve the complaint on them. Although his counsel appears to have prepared complaints for service, he failed to do so.

It was not until June 21, 2019, after the close of discovery and the filing of summary judgment motions, a year and three months after dismissal of the complaint against the individual defendants, and more than a year after the June 13, 2018 case management conference, that Miller's counsel recognized that the individual defendants had not been served. Counsel offered no explanation for having not effectuated service, despite the absence of service having resulted in court action three times since the filing of the complaint. In fact, at the time that Miller sought reinstatement of the complaint, service still had not been effectuated on the individual defendants.

We acknowledge, as did the trial court, that on March 8, 2018, GNAC's counsel filed a substitution of counsel indicating that he was appearing on behalf of all of the individual defendants. However, two days later, the court issued the notice dismissing the complaint against the individual defendants. After that notice, Miller was aware that service had not been effectuated. He took no steps

15

to address the dismissal or to obtain GNAC's counsel's written acceptance of service on behalf of those defendants.

In addition, although Miller argues that counsel for both parties proceeded through discovery as if the dismissal of the complaint against the individual defendants had not taken place, he offered no proof of that contention. GNAC's motions for summary judgment were filed on behalf of GNAC and Gomez, not the remaining individual defendants. Although it is not clear why motions were filed on behalf of Gomez, the record contains no proof that GNAC's counsel was authorized to waive service on his behalf. In light of these circumstances, we cannot conclude that it was an abuse of discretion to deny reinstatement of the complaint.[3]

## III.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment or order as a matter of law." R.

---

[3] We note, as did the trial court, that Rule 1:13-7(a) requires the party seeking reinstatement of a complaint to file a motion requesting that relief. Miller failed to do so. Because the court considered whether extraordinary circumstances existed, we do not decide whether the absence of a formal motion would preclude reinstatement of a complaint.

16

4:46-2(c). To determine whether there exists a genuine issue of material fact that precludes summary judgment, the court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995). The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Ibid.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boyland, 307 N.J. Super. 162, 167 (App. Div. 1998). All facts are viewed in a light most favorable to the non-moving party, "keeping in mind '[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion . . . would require submission of the issue to the trier of fact.'" Schiavo v. Marina Dist. Dev. Co., 442 N.J. Super. 346, 366 (App. Div. 2015) (alteration in original) (quoting R. 4:46-2(c)). "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful

'merely by pointing to <u>any</u> fact in dispute.'" <u>Prudential</u>, 307 N.J. Super. at 167 (emphasis in original) (quoting <u>Brill</u>, 142 N.J. at 529-30).

Miller argues that the trial court improperly weighed the credibility of the evidence submitted in support of GNAC's summary judgment motions, discarded Miller's certifications submitted in opposition to those motions, and erred in its legal analysis. We have carefully reviewed the record, including the video surveillance recording of Miller's interaction with GNAC's employees, and conclude that Miller's arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E). We add only the following observations.

The surveillance video recording depicts behavior by Miller that no reasonable juror could conclude was insufficient to justify his physical removal from the casino floor or to serve as probable cause for the filing of the criminal complaints. The recording clearly shows Miller's refusal to leave the hotel casino when directed to do so, his continued physical resistance to the efforts of GNAC personnel to effectuate his removal, and the resulting offensive bodily contact with those employees.

Even if, as Miller alleges, GNAC improperly refused to permit him to play blackjack because of his status as a card counter, that refusal did not authorize

Miller to refuse to leave the hotel casino when told to do so, to physically resist removal efforts by GNAC personnel, or to come into offensive physical contact with security officers. See Uston, 89 N.J. at 173.

In addition, we affirm the trial court's grant of summary judgment on Miller's malicious prosecution claim based on the trial court's conclusions regarding the existence of probable cause for the criminal complaints and the absence of evidence of malice on the part of GNAC's employees. Those conclusions alone are sufficient to warrant entry of summary judgment in favor of GNAC. We do not address the validity of the trial court's conclusion that Miller's claim is precluded by our holding in Myrick.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5320-18