**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1754-20

JP CP INVESTORS, LLC[1]
d/b/a CONTINENTAL PLAZA
ASSOCIATES JV,

      Plaintiff-Respondent,

v.

JC MCA CONSULTING, LLC,
YOSEF CLAPMAN, and
YAFFA SILKES,

      Defendants-Appellants.

_____

        Argued December 15, 2021 – Decided February 7, 2022

        Before Judges Sumners and Vernoia.

        On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4517-19.

        Rickin Desai argued the cause for appellant (Zachter PLLC, attorneys; Rickin Desai and Jeffrey Zachter, on the briefs).

---

[1]  According to a February 12, 2021 order of judgment, the correct name is JD CP Investors, LLC.

Michelle Conroy argued the cause for respondents (Kessler Law, LLC, attorneys; Michelle Conroy, of counsel; Henry Sanchez, on the brief).

PER CURIAM

In this commercial property dispute seeking unpaid rent, attorney fees, and costs, defendants JC MCA Consulting, LLC (JC MCA), Yosef Clapman, and Yaffa Silkes appeal orders denying their motion for summary judgment; granting plaintiff JC CP Investors, LLC's cross-motion for partial summary judgment; and entering judgment for plaintiff in the amount of $80,458.88. We affirm because the motion judge applied the correct legal principles in his orders and reached the appropriate determination based on the undisputed facts.

I

We discern the following facts from the record. In June 2017, JC MCA entered into a seven-year agreement to commence on March 15, 2018, leasing an office suite (suite) in a Hackensack commercial building (building) owned by plaintiff. Clapman and Silkes agreed to personally guarantee the payment of rent.

On January 1, 2019, approximately nine months into the lease, defendants defaulted. Beginning in April, the suite was advertised and marketed for lease with a commercial real estate agency and listing services.

On May 3, plaintiff filed a complaint against JC MCA seeking possession of the suite. Twenty days later, a judgment of possession was entered.

On June 14, plaintiff filed the within complaint against defendants demanding unpaid rent, attorney fees, and costs. In response, defendants filed an answer with counterclaims for breach of the lease, conversion, and unjust enrichment.

On December 18, plaintiff sold the building and assigned their rights to the building's leases to Continental Plaza Owner, LLC and Continental Plaza, TIC LLC (collectively Continental). The assignment agreement, in pertinent part, stated:

> Leases. [Plaintiff] hereby transfers and assigns to [Continental] any and all right, title[,] and interest which [Plaintiff] may have, as landlord or otherwise, in leases with tenants covering spaces in the [building] . . . . [Continental] hereby (a) assumes all liabilities and obligations of [Plaintiff] under the Leases arising or accruing from and after the date hereof . . . and (b) agrees to indemnify, defend[,] and hold harmless [Plaintiff] from any and all damages, losses, costs, claims, liabilities, expenses, demands[,] and obligations under or with respect to the Leases arising or accruing from and after the date hereof.
>
> [Emphasis added.]

As of that date, defendants owed plaintiff $65,583.88 for rent.

A-1754-20

Defendants subsequently filed a summary judgment motion to dismiss plaintiff's complaint, arguing plaintiff lacked standing because it forfeited its rights to collect damages arising from the lease to Continental under the assignment agreement. Plaintiff cross-moved for summary judgment relying upon affidavits by plaintiff's and Continental's authorized signatories, asserting the assignment only applied to liabilities and obligations arising from the building's leases prior to the date of the assignment; thus, entitling plaintiff to unpaid rent owed prior to the assignment. Defendant did not present any competent evidence disputing the affiants' representations. Plaintiff also submitted an affidavit from its leasing agent providing that since JC MCA's eviction in May 2019 through December 2019, the suite was advertised for lease, including, but not limited to, a widely used a commercial real estate listing service, and was showed to brokers and prospective tenants. Despite these efforts, plaintiff was unsuccessful in reletting the suite.

Judge Walter F. Skrod entered separate orders on January 4, 2021, denying defendants' motion for summary judgment and granting plaintiff's cross-motion for partial summary judgment, explaining his reasoning for the

4

orders in an eleven-page rider.[2] On February 12, the judge entered an order of judgment against defendants totaling $80,458.88, inclusive of $65,853.28 for unpaid rent, $13,032.50 for reasonable attorney fees, and $1573 for costs, together with a rider detailing his reasoning.

II

We begin by describing the principles guiding our analysis. Our review of an order granting summary judgment is de novo. Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 599 (App. Div. 2014). Under that standard, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2). "An issue of material fact is 'genuine only if, considering the burden of

---

[2] On the same day, the judge entered another order denying as untimely plaintiff's motion for leave to file an amended complaint. On February 19, 2020, the judge denied plaintiff's motion for reconsideration of that order but allowed correction of plaintiff's name and Continental to file a complaint against defendants "for alleged damages relating to the remainder of the lease term which shall not be subject to the entire controversy doctrine." The order added that "[Continental] is a different entity—[it] may file a complaint. It is questionable that the entire controversy [doctrine] applies but the court is not deciding that issue as it is not before the court."

persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

We must give the non-moving party "the benefit of the most favorable evidence and most favorable inferences drawn from that evidence." Est. of Narleski v. Gomes, 244 N.J. 199, 205 (2020) (quoting Gormley v. Wood-El, 218 N.J. 72, 86 (2014)); however, we owe no special deference to the motion judge's legal analysis, RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

In granting summary judgment and entering a judgment of $80,458.88 in plaintiff's favor, Judge Skrod's reasoning was supported by credible evidence in the record and is well-founded in the law. He determined, based on the assignment's plain language and plaintiff's and Continental's mutually agreed upon explanation of the assignment, there was no merit to defendants' argument that plaintiff had no standing to pursue its claims because it assigned its rights under the lease to Continental. Therefore, the judge held plaintiff retained its right to sue defendants for unpaid rents prior to December 18, 2019, the date of

the assignment. There was no factual basis for defendants' contention that they were intended to be third-party beneficiaries of the assignment.

The judge also ruled plaintiff did not fail to mitigate damages based on the two affidavits detailing its efforts to find a new tenant and providing a copy of an advertisement for leasing the suite. He found defendants' only proofs for their failure to mitigate defense—screen-shots of a real estate agency website not advertising the suite—were "uncorroborated, unauthenticated hearsay." The judge determined that, even assuming defendants' screenshot proofs were admissible, plaintiff's evidence of advertisements that the suite was available for lease and certified statements from "those with personal knowledge" firmly demonstrated plaintiff's mitigation of damages.[3] We affirm substantially for the reasons given by the judge. We add the following comments.

The plain language of the assignment agreement clearly and unambiguously provides that plaintiff retained the right to pursue claims arising and accruing under the building's lease prior to the date of the assignment to Continental. See Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 615-16

---

[3] Judge Skrod determined neither party was entitled to summary judgment on plaintiff's demand for $276,375, representing unamortized costs of the original buildout of the suite space and leasing commissions, because there was a "genuine dispute as to material fact as to this claim." Neither party challenges the judge's ruling on this issue.

A-1754-20

(2020) ("It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."'" (alteration in original) (quoting <u>In re Cnty. of Atlantic</u>, 230 N.J. 237, 254 (2017))).  Moreover, this interpretation was confirmed by the affidavits, which were properly submitted in accordance with <u>Rule</u> 4:46-2 and relied upon by Judge Skrod in determining the respective summary judgment motions.  The assignment gave Continental rights to claims against defendants, prospectively, on and after December 18, 2019.  Plaintiff retained the right to pursue its claims against defendants that arose prior to the assignment.  Accordingly, we dismiss defendants' contention that the judge misinterpreted the assignment agreement and mistakenly relied upon the affidavits in deciding the motions.

Although unnecessary to our affirmance of the court's summary judgment award to plaintiff, for the sake of completeness we address defendants' claim that they are third-party beneficiaries to the assignment agreement.  We find no merit in the contention.  Our court recently held:

> Traditionally, third-party beneficiary status "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." <u>Ross [v. Lowitz]</u>, 222 N.J. 494, 513 (2015) (quoting <u>Broadway Maint. Corp. v.</u>

8

Rutgers, 90 N.J. 253, 259 (1982)). Where "there is no intent to recognize the third party's right to contract performance, 'then the third person is only an incidental beneficiary, having no contractual standing.'" Ibid. (quoting Broadway Maint. Corp., 90 N.J. at 259). "The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." Broadway Maint. Corp., 90 N.J. at 253 (citing Standard Gas Power Corp. v. New England Cas. Co., 90 N.J.L. 570, 573-74 (E. & A. 1917)).

[Crystal Point Condo. Ass'n, Inc. v. Kinsale Ins. Co., 466 N.J. Super. 471, 482 (App. Div. 2021).]

Defendants were not parties to the assignment agreement, and they cite nothing in the record showing that plaintiff and Continental intended for them to be third-party beneficiaries to the agreement. Any perceived benefit from this contract for defendants is merely an unintended incident of the agreement. Since defendants are not third-party beneficiaries, they have no right to assert any purported claims based on the assignment's terms.

For the first time on appeal, defendants contend that failure to allow them third-party beneficiary status creates an "absurd result" of bifurcating litigation under the lease and undermining the entire controversy doctrine. Since this contention was not raised before the motion judge, we need not consider it on appeal because it does not "'go to the jurisdiction of the trial court or concern

9

matters of great public interest.'" Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Nevertheless, we address the contention, concluding it has no merit.

"The entire controversy doctrine is an equitable principle[,] and its application is left to judicial discretion." 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div. 2011) (citing Allstate N.J. Ins. Co. v. Cherry Hill Pain & Rehab. Inst., 389 N.J. Super. 130, 141 (App. Div. 2006)). It "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)). The doctrine applies when the claims of all parties arise out of the same common string of facts or circumstances. Ibid.

Essentially, the entire controversy doctrine is a claim mandate imposed on all parties to a litigation.

> The doctrine was conceived of as a claim-joinder mandate, requiring all parties in an action to raise in that action all transactionally related claims each had against any other whether assertable by complaint, counterclaim, or cross-claim.

10

. . . .

> There is no mandatory party joinder requirement under the entire controversy doctrine. Except in special situations involving both inexcusable conduct and substantial prejudice to the non-party resulting from omission from the first suit, successive actions against a person not a party to the first action are not precluded.
>
> [Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2022) (citations omitted)].

Defendants' reliance on the entire controversy doctrine is misplaced. Although plaintiff's complaint was filed before the assignment, it only sought and was granted judgment for unpaid rent due before the effective date of the assignment. Continental was not a party to the action and plaintiff had no obligation to join it to the action so that it could prosecute its own damage claims against defendants that arose as of the assignment date. The entire controversy doctrine has no place in this dispute.

Finally, as for the entry of judgment, there is no merit to defendants' contention that the judge erred by dismissing their affirmative defense that plaintiff failed to mitigate damages. Plaintiff was required to make reasonable efforts to mitigate its damages after JC MCA breached the lease agreement and was evicted. See McGuire v. City of Jersey City, 125 N.J. 310, 320-21 (1991). Defendants, however, failed to satisfy their burden of proving plaintiff did not

mitigate its damages. See Cohen v. Radio-Elecs. Officers Union, 275 N.J. Super. 241, 262 (App. Div. 1994) (citations omitted) ("[M]itigation is always an element in a contract suit for damages, with the burden of proving facts in mitigation of damages resting upon the party breaching the contract."). Indeed, the record demonstrated that plaintiff provided proofs of its attempts to market the suite after JC MCA's eviction by retaining a leasing agent and sending a marketing email advertising the available space in its building.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1754-20