Adolph M. ROTERMUND, Appellant,

v.

UNITED STATES STEEL CORPORA-
TION et al., Appellees.

No. 72–1405.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1973.

Decided March 7, 1973.

James L. Sullivan, St. Louis, Mo., for appellant.

Thomas L. Croft and Albert E. Schoenbeck, St. Louis, Mo., for appellees.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This cause initially was filed in the Circuit Court of the City of St. Louis, Missouri. It was removed to federal court by United States Steel pursuant to removal jurisdiction under 28 U.S.C. § 1441(c) based upon plaintiff-appellant Rotermund's separate and independent claim against Steel in Count I of the complaint. Rotermund now appeals from entry of summary judgment which was entered May 26, 1972. The district court's opinion is reported at 346 F.Supp. 69 (E.D.Mo.1972).

The original action was for specific performance of an alleged agreement entered into between defendants-appellees, Powell and United States Steel under date of June 28, 1965. Count I of Rotermund's complaint sought specific performance against USS which would require USS to purchase shares of Basic Materials common stock owned by Rotermund. Count II alleged a conspiracy by all defendants to induce USS to violate its alleged obligation to purchase stock from Rotermund under the 1965 agreement and that Rotermund was discharged from Basic in furtherance of the al-

leged conspiracy. Count III alleged a violation of the Missouri Service Letter Statute [1] by Basic.

The trial court determined as a matter of law that U. S. Steel under the agreement was not obligated to purchase Rotermund's stock and entered summary judgment accordingly on Count I. In view of its finding that USS did not violate the agreement, the court further ruled there could be no conspiracy to induce USS to breach the agreement and therefore entered judgment in favor of all defendants on Count II. *See,* Howe v. St. Louis Union Trust Co., 392 S.W.2d 625, 628 (Mo.1965). Because the remaining Count III, a non-removable claim, required construction of a Missouri statute, the trial court exercised its discretion and remanded it to the state court for disposition. *See,* Murphy v. Kodz, 351 F.2d 163, 167–168 (9th Cir. 1965).

Since the factual circumstances together with the relevant portions of the 1965 agreement, the 1968 option, and the 1968 amendment are set out in detail by the trial court in its opinion at 346 F.Supp. 69, we shall confine our statement to those facts essential to our determination.

There are three agreements relevant to this cause. The only parties to all three agreements are USS and Powell.

Pursuant to Section 5 of the 1965 agreement, USS, or its nominee, was given the option to purchase all the Basic stock which Powell would "now or hereafter own" during the fifteen year period from the making of the agreement (or within 20 years if Steel owns, or is obligated under any circumstance to purchase, any obligations of Basic) under three circumstances:

(a) after Powell's death;

(b) after Powell's retirement from the active management of Basic; or

(c) if the book value of Basic common shares would fall 20% below book value as disclosed by auditing statements for either of the two immediate preceding years.[2]

Section 6 states in substance that during the same 15-year period, Powell, his guardian, his estate or his trustee would have the option to require USS to purchase all his stock in Basic under the same circumstances as (a) and (b) stated in Section 5.[3]

At the time of the 1965 agreement, Rotermund was an officer of Basic, and owned jointly with his wife 2,000 shares of Basic common stock. Section 10 of the agreement is the basis of Count I of Rotermund's complaint. It reads as follows:

"If during the term of this agreement USS shall purchase Powell's stock in Basic pursuant to the terms hereof USS shall within thirty (30) days after such purchase irrevocably offer for sixty (60) days to acquire on the same terms and conditions any stock of Basic which, according to its records, was held by Oliver Keller, *Adolph M. Rotermund,* Stephen F. Powell or Gale H. Powell on the date twelve (12) months prior to the date of such purchase. Acquisitions of stock by USS pursuant to this section shall be made within fifteen (15) days of acceptance of USS's offer and tender to USS of the certificates of stock which is the subject of such acceptance." (Emphasis supplied.)

On July 30, 1968, USS and Powell entered into an agreement granting USS an option to purchase 25,000 common shares of Basic for $1,696,000.00 on condition that Powell would surrender to Basic the warrants he had acquired under the 1965 agreement.

That same day, the 1965 agreement was amended, to become effective only if USS exercised its option to purchase

---

1. Vernon's Ann.Mo.Stat. § 290.140 (1965).

2. 346 F.Supp. 69, 70–71.

3. *Id.* at 71.

**1142**

25,000 shares of Basic stock pursuant to the 1968 amendment. Principally, Section 5 was amended to delete paragraph 5(b) under which USS had the option to purchase Powell's stock after his retirement. Section 6 likewise deleted the retirement provision with respect to Powell's option to require USS to purchase his stock. Additionally, Section 10 was amended to provide that the contemplated 1968 purchase by USS of 25,000 shares of Powell's stock in Basic "shall not constitute a purchase within the meaning of the term as used in this paragraph 10."[4]

In October of 1968, USS exercised its option under the 1968 agreement to purchase 25,000 shares of Powell's stock. Approximately 3 years later, in July of 1971, Rotermund demanded that USS purchase his 2,000 shares of Basic for the same price per share as USS had paid for Powell's in 1968.

Rotermund raises three main issues which we discuss seriatim. That the trial court erred:

(1) in failing to hold that Rotermund was a third party creditor or donee beneficiary under the 1965 agreement, and that his rights under that agreement could not be changed by the 1968 amendment without his consent.

(2) in not holding that the 1968 sale of the 25,000 shares to USS and the 1968 amendment to the 1965 agreement together triggered events which obligated USS to purchase Rotermund's stock in Basic.

(3) in granting summary judgment for defendants on Count I, thereby precluding Rotermund from proceeding on Count II, for the reason that there is a disputed issue of fact as to whether Powell's sale of the Basic shares to USS was pursuant to the 1965 agreement.

I.

In support of his first assigned error, Rotermund refers us to Black and White Cabs of St. Louis, Inc. v. Smith, 370 S.W.2d 669 (Mo.App.1963) for the proposition that "where the contract creates a right in favor of a third person, the law presumes that the party to the contract intended to confer benefits on the third person and the third party beneficiary has the right to enforce the contract . . . ." Id. at 675. To be sure, we have no conceptual difficulty with this principle. However, its application is delimited by the general rule, as recognized by the trial court, that "[o]ne suing on a contract allegedly made for his benefit as a third-party beneficiary must accept the contract as it was made by the parties thereto; and he is in no better position than, and his rights are no greater than those of, the contracting party through whom he claims." Stephens v. Great Southern Savings and Loan Ass'n, 421 S.W.2d 332, 337 (Mo.App.1967). In this connection, the trial court held that "only a purchase pursuant to the terms of the 1965 agreement would give rise to a third-party beneficiary claim by [Rotermund]" since the 1965 agreement which he relies upon obligates USS to purchase Rotermund's 2,000 shares in Basic only if USS first were to purchase "Powell's stock in Basic pursuant to the terms thereof." We fully agree with the trial court's holding.

The 1965 agreement provides that an option to purchase the Powell shares by USS could not be made pursuant to the terms thereof unless: (1) Powell died, or (2) Powell retired from the management of Basic, or (3) the book value of stock would become less than a specified standard. The record before us indicates that none of these conditions precedent had occurred. Thus, no present obligation to Rotermund as a third-party beneficiary had been breached, and USS, therefore, is not

4. *Id.* at 72–73.

obligated to purchase Rotermund's stock under the 1965 agreement.

Inasmuch as the trial court based its determination of defendants' motion for summary judgment solely upon the terms of the 1965 agreement as originally drawn and relied upon by Rotermund, we hold that the trial court did not err in determining it unnecessary to decide whether the 1965 agreement could be amended without Rotermund's consent insofar as it affects his rights as a third-party beneficiary.[5]

## II.

Under Rotermund's next assigned error, he alleges that the trial court erred in failing to hold that the purchase by USS of 25,000 shares of Powell's stock and the 1968 amendment to the 1965 agreement together constituted an exercise of the option and the triggering of events which obligated USS to buy Rotermund's 2,000 shares in Basic.

■ Rotermund's rights under the 1965 agreement are based wholly upon the rights of Powell thereunder. The 1965 agreement relied upon by Rotermund provides in Section 10 that USS would be obligated to purchase Rotermund's stock upon condition that USS first exercise its option to purchase *all* Powell's shares pursuant to the 1965 agreement. As we have determined, it is evident from this record that none of the triggering circumstances enumerated under Sections 5 and 6 had taken place: Powell had not died, nor had he retired, nor had the book value of the stock fallen below the given standard. Moreover, Section 10 of the 1968 amendment expressly states that the purchase of 25,000 shares of Powell's stock by USS would not be construed as constituting a "purchase" within the meaning of Section 10 of the 1965 agreement. Since Powell was not entitled to compel USS to purchase all his common shares of Basic stock, Rotermund is in no better position. *See*, Allen v. Globe-Democrat Publishing Company, 368 S.W.2d 460, 463 (Mo.1963); Stephens v. Great Southern Savings & Loan Ass'n, 421 S.W.2d 332, 337 (Mo.App.1967); Noles v. Terminal R.R. Ass'n of St. Louis, 154 S.W.2d 606, 609 (Mo.App.1941); Williston on Contracts, (3rd Ed) § 364A. Consequently, Rotermund cannot now force upon USS a purchase of his 2,000 shares.

## III.

■ Rotermund lastly urges that the issue of whether the sale of the 25,-000 Powell shares was pursuant to the 1965 agreement raises a question of fact, thus rendering improper the entry of summary judgment. We have stated before that when a motion for summary judgment is made to the trial court, only one determination is before the court—whether or not there are issues of fact to be tried. Minnesota Bearing v. White Motor Corp., 470 F.2d 1323 (8th Cir. January 9, 1973); 3 B & H, Federal Practice and Procedure § 1231 at 101 (Wright Ed. 1958). Moreover, "the right to judgment must be shown 'with such clarity as to leave no room for controversy, and . . . that . . . [Rotermund] would not be entitled to recover under any discernible circumstances'" Minnesota Bearing v. White Motor Corp., supra, at 1328; Cervantes v. Time, Inc., 464 F.2d 986,

---

5. Basic and Steel suggest that despite what label might be attached to Rotermund's beneficiary status, in paragraph 22 of the 1965 agreement the parties signatory thereto expressly retained the right to rescind or amend the original agreement without obtaining the consent of any third party beneficiary. We disagree. Paragraph 22 simply states that if the agreement is to be "changed, waived, discharged or terminated" at all, it must be done in writing. Paragraph 22 cannot, therefore, be construed as an express reservation of right to amend the 1965 agreement as against a third party beneficiary. Instead, we interpret it to be no more than a recital of a general principle of contract law otherwise applicable. *See*, Restatement of Contracts § 407, in connection with V.A.M.S. § 432.020 (1952) (rescission or modification of a contract within the Statute of Frauds must be in writing); and *see generally*, 44 A.L.R.2d 1270.

993 (8th Cir. 1972); Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213, 216 (8th Cir. 1951).

In Elbow Lake Cooperative Grain Co. v. Commodity Credit Corp., 251 F.2d 633, 637 (8th Cir. 1958) we said that "ambiguity in a contract cannot be created by the mere assertion of a party to it." Here there are no disputed facts. The only question before the trial court was whether as a matter of law the purchase of Powell's 25,000 shares by USS obligated USS to purchase the Rotermund stock. We have effectively covered the waterfront in determining that none of the triggering conditions precedent to purchasing Rotermund's shares have occurred. Rotermund suggests, however, that an examination of Basic's books by the trial court "might prove that some of the events specified in the 1965 agreement may have transpired to trigger the exercise of the option." Rotermund was afforded ample opportunity to apprise the trial court of facts relevant to the value of Basic stock since consolidated financial statements for each year from 1961 through 1970 inclusively were produced at the Powell deposition pursuant to Rotermund's request.[6] Nevertheless, this record is devoid of any attempt by Rotermund to provide the trial court with such relevant data.

Rotermund additionally urges that interrogatoris submitted to USS were not answered; thus the court's ruling on May 26, 1972 precluded discovery and foreclosed him from proving his case. Fed.R.Civ.P. 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions *on file,* together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." (emphasis supplied). USS filed its motion for summary judgment on September 23, 1971. On November 2, 1971, USS filed its supporting memorandum. On the same date, separate motions for summary judgment and supporting briefs were filed by Basic and Powell. On November 5, 1971, upon his own oral request, Rotermund was granted an additional 20 days in which to file affidavits and suggestions in opposition to the separate motions. On December 17, 1971 the motions for summary judgment were taken as submitted. By written agreement of the parties, depositions taken prior to December 17, 1971 were to be considered by the trial court in ruling upon the motions.

■ In view of the time available to Rotermund to propound interrogatories prior to the date of submission coupled with the trial court's proper adherence to Rule 56(c) in considering those matters on file by December 17, 1971, this contention by Rotermund forms no basis for setting aside summary judgment.[7] We hold, therefore, that the trial court properly entered summary judgment as to Count I of the complaint. *Cf.*, Cervantes v. Time, Inc., *supra,* 464 F.2d at 993.

The only remaining question is whether Basic, Powell and USS conspired together to induce USS to violate its alleged contractual obligation to purchase Rotermund's stock, and that whether in furtherance of this conspiracy, Rotermund was fired as an employee of Basic.

6. Even if an examination of Basic's financial statements were to prove that some of the events specified in the 1965 agreement transpired, it still remains that the purchase of 25,000 shares of Powell's stock did not constitute a purchase of all the Powell shares within the meaning of the 1965 agreement. Since 25,000 shares constitutes less than ⅓ of Powell's holdings, we are not faced with the problem of determining whether "all" means "substantially all."

7. We note that correspondence appears in the record to Judge Regan from Rotermund's counsel stating: "Certainly the court cannot take into consideration anything other than those depositions taken prior to December 17, 1971 in considering the motions for summary judgment, but in an effort to be prepared for trial in the event summary judgment is not granted to defendants I felt it necessary to continue with the discovery process."

Specifically, Rotermund argues that defendants excluded the retirement provision of the 1965 agreement to keep Rotermund from being eligible for stock should Powell retire. As we have suggested repeatedly, this agreement is not self-executing. The record before us shows that at the time this action commenced, Powell had not retired from Basic. Even assuming that he had, however, under the 1965 agreement this event would have done no more than trigger an option on the part of Steel to purchase Powell's shares. If USS were to purchase all Powell's shares, then, and only then, would it be obligated to Rotermund.

■■ A Civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties "to inflict a wrong against or injury upon another," and "an overt act that results in damage." Neff v. World Publishing Co., 349 F.2d 235, 257 (8th Cir. 1965). Under Missouri law, "[t]he gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy . . . ." Contour Chair Lounge Co. v. Aljean Furniture Mfg. Co., 403 S.W.2d 922, 926 (Mo.App. 1966).

■ Under the instant circumstances, damages would accrue only if there had been an actual breach of the contract. Since no breach has occurred, we label this aspect of Rotermund's argument to be without foundation.

■ Finally, Rotermund has failed to demonstrate that any genuine issue of fact relative to his allegation that defendants conspired to fire him from his employ with Basic. As noted in Cervantes v. Time, Inc., *supra*, 464 F.2d at 993, the "extreme nature" of summary judgment "does not lighten the burden of a party against whom a motion therefor is interposed." Fed.R.Civ.P. 56(e). Thus, as spelled out by the Rule:

" . . . [A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

By reason of the absence in this record[8] of any genuine factual issue to be tried, the judgment of the trial court must be affirmed.[9]

---

8. We have thoroughly examined the affidavits and depositions contained therein.

9. The trial court properly remanded Count III to State court for its determination since Count III involves the construction of a Missouri statute and the removing defendant has been eliminated. See, 1A J. Moore, Federal Practice ¶ 0.168 [4.–1] at 1342 (2nd Ed. 1965).