**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2578-23

DR. TERRY RAMNANAN,

    Plaintiff-Appellant,

v.

COLIN KEIFFER, ESQ.,
individually, DETECTIVE WENDY
BERG, individually, DETECTIVE
GRACE PROETTA, individually,
DETECTIVE JOHN CAMPANELLA,
individually, RONALD HAYEK, D.C.,
individually, UNION WELLNESS
CENTER PA LLC, ADAM AWARI,
D.C., individually, and ADVANCED
CHIRO SPINE CENTER, PC,

    Defendants-Respondents.

_____

Argued October 1, 2025 – Decided October 24, 2025

Before Judges Mayer, Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2146-23.

Joseph Pace (J. Pace Law, PLLC) of the New York bar, admitted pro hac vice, argued the cause for appellant

(Joseph & Norinsberg, LLC, and Joseph Pace, attorneys; Diego O. Barros and Joseph Pace, on the briefs).

Justine Longa, Deputy Attorney General, argued the cause for respondents Colin Keiffer, Wendy Berg, Grace Proetta, and John Campanella (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

Geoffrey T. Bray argued the cause for respondents Ronald Hayek, D.C., and Union Wellness Center PA LLC (Bray & Bray, LLC, attorneys; Geoffrey T. Bray, on the brief).

Richard A. Greifinger argued the cause for respondents Adam Awari, D.C., and Advanced Chiro Spine Center PC (Law Offices of Richard A. Greifinger, attorneys; Richard A. Greifinger, on the brief).

PER CURIAM

Plaintiff Dr. Terry Ramnanan appeals from three orders, dated March 29, 2024, dismissing with prejudice his complaint against defendants Colin Keiffer, a Deputy Attorney General for the State of New Jersey, with the Office of Insurance Fraud (OIF), Wendy Berg, a detective with the OIF, John Campanella, a detective with the OIF, and Grace Proetta, a detective with the Union County Prosecutor's Office, who assisted the OIF, (collectively, State defendants), defendants Ronald Hayek, D.C. and Union Wellness Center PA, LLC

2

(collectively, Hayek), and defendants Adam Awari, D.C. and Advanced Chiro Spine Center, PA (Awari).  We affirm.

We recite the facts from the motion record as well as two opinions involving the same parties from the United States District Court for the District of New Jersey, Ramnanan v. Keiffer, No. 20-cv-12747, 2021 U.S. Dist. LEXIS 121980 (D.N.J. June 30, 2021) (Ramnanan I), and Ramnanan v. Keiffer, No. 20-cv-12747, 2023 U.S. Dist. LEXIS 52623 (D.N.J. Mar. 28, 2023) (Ramnanan II).

In his state court action, unlike his allegations in Ramnanan I and Ramnanan II, plaintiff asserts claims against defendants under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2.  Specifically, plaintiff alleges fabrication of evidence (Count 1), malicious prosecution (Count 2), deprivation of substantive due process (Count 3), conspiracy (Count 4), and intentional infliction of emotional distress (Count 5).

Plaintiff is a New Jersey licensed pain management physician.  Hayek and Awari are chiropractors.  The State defendants commenced an investigation into various medical providers who allegedly committed insurance fraud, commercial bribery, and participated in an illegal kickback scheme.  Hayek and Awari were included in that investigation.

A-2578-23

In 2016, Hayek pleaded guilty to charges of conspiracy, money-laundering, commercial bribery, and failure to pay taxes. As part of his plea, Hayek agreed to cooperate with the State defendants regarding the alleged kickback scheme. Consistent with the plea agreement, Hayek received a probationary sentence and the State defendants agreed to submit a letter to the Chiropractic Licensing Board, asking that Hayek retain his chiropractic license based on his cooperation in the State's prosecution of the kickback scheme.

Hayek implicated plaintiff and other medical providers in the alleged kickback scheme and other illegal activities as part of his cooperation agreement. Hayek told the State defendants that plaintiff paid him referral fees in exchange for referring patients to plaintiff for electrodiagnostic studies and tests. Hayek, using state-provided equipment, recorded an April 8, 2016 conversation with plaintiff related to the purported fee arrangement.

Based on Hayek's statement and the recorded conversation between plaintiff and Hayek, Keiffer arranged for a proffer session with plaintiff and plaintiff's criminal defense attorney. At this session, Keiffer presented a "Kickback Spreadsheet," detailing various payments based on referral of patients. Plaintiff denied Hayek's allegations regarding plaintiff's involvement in payments for patient referrals or any other illegal activities. Plaintiff's

4

criminal defense attorney told Keiffer the information in the spreadsheet was fabricated and Hayek lied about his interactions with plaintiff.

In August 2017, plaintiff was charged in a three-count indictment with third-degree conspiracy, third-degree commercial bribery, and third-degree criminal running. After the indictment, plaintiff and his new criminal defense attorney again met with Keiffer. At this meeting, Keiffer provided a "Shared Claims chart," purportedly providing instances in which plaintiff and Hayek billed insurance companies for medical procedures, and a "Summary chart," listing the names of patients allegedly referred to plaintiff by Hayek. Plaintiff claimed these documents were also fabricated.

Ten months later, Awari implicated plaintiff in a patient referral for payment scheme. Awari entered into a plea agreement with the State defendants to avoid potential criminal charges being filed against him. As part of that agreement, Awari agreed to cooperate in the State's pursuit of kickback charges against various medical providers.

In May 2018, the State filed a superseding indictment, charging plaintiff with conspiracy (Count 1), misconduct by a corporate official (Count 2), health care claims fraud (Count 3), theft by deception (Count 4), commercial bribery (Count 5), criminal running (Count 6 and 10), conspiracy (Count 7), healthcare

claims fraud (Count 8), and commercial bribery and breach of duty to act disinterestedly (Count 9). In seeking an indictment against plaintiff, the State presented the Kickback Spreadsheet, Summary chart, and Shared Claims chart to the grand jury. Additionally, Berg testified before the grand jury and summarized the statements made to the State defendants by Hayek and Awari. Neither Hayek nor Awari testified at the grand jury proceeding.

A state court criminal judge dismissed the indictment on May 23, 2019, finding the State misrepresented the statutory law relevant to healthcare fraud before the grand jury. The criminal court judge concluded the State "left the grand jurors with [a] patently false impression that the law was in its favor" by misleading, overstating, and incorrectly advising the grand jury of the applicable law. The criminal court judge stated:

> Had the State not misled the grand jury regarding the law applicable to the charges and had the State not charged defendant improperly with the use of criminal runners, and had the State not . . . overstated the materiality and misled the grand jury with respect to . . . how many, if any, of the insurers would have actually denied . . . these claims, the [c]ourt is not convinced that the grand jury would have indicted the defendant.

In September 2020, plaintiff filed a federal court action against defendants who are parties to this appeal and other defendants, alleging his personal and

6

professional reputation was tarnished due to the criminal charges and his medical practice was ruined. Ramnanan I, at *12-13. In Ramanan I, plaintiff alleged violation of the NJCRA and violation of his federal civil rights under 42 U.S.C. § 1983, including claims for fabrication of evidence, malicious prosecution, malicious abuse of process, inducement of false testimony, conspiracy to violate his civil rights, and a "stigma plus" claim. Id. at *13-14.

The federal judge dismissed plaintiff's claims against the State defendants without prejudice based on absolute prosecutorial immunity. Id. at 41-42. The federal judge concluded the State defendants' actions were "carried out in preparation of, and for use in, grand jury proceedings" and thus immune from liability. Id. at 24.

In dismissing without prejudice the federal court claims against Hayek and Awari, the judge held they were not state actors and did not act under color of law. Id. at 34-35. In rejecting plaintiff's claims that Hayek and Awari were state actors working in concert with the State defendants to prosecute plaintiff, the federal judge cited the allegations in plaintiff's federal court action contending the State defendants coerced Hayek and Awari into testifying against plaintiff. Id. at 34. The federal judge declined to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Id. at 40.

7

As a result of the without prejudice dismissal of his claims in Ramnanan I, plaintiff filed a second amended complaint in federal court, naming the same defendants as in the matter on appeal. The complaint in Ramnanan II included the same § 1983 claims and state law NJCRA claims asserted in Ramnanan I.

The federal judge dismissed plaintiff's claims in Ramnanan II, citing the same grounds for dismissal as expressed by the judge in Ramnanan I. See Ramnanan II, at *27-29. The federal judge in Ramnanan II also declined to exercise jurisdiction over plaintiff's state law claims.

About a month after the federal court's dismissal of Ramnanan II, plaintiff filed a complaint in the Superior Court of New Jersey, Bergen County, claiming defendants violated the NJCRA by: fabricating evidence (Count One); engaging in a malicious prosecution against him (Count Two); depriving him of due process (Count Three); entering into a conspiracy (Count Four); and intentionally inflicting emotional distress (Count Five).

The State defendants, Hayek, and Awari filed motions to dismiss under Rule 4:6-2(e). After considering the written submissions and hearing argument, the judge issued a March 29, 2024 order and written decision dismissing plaintiff's state court complaint. The motion judge explained that all defendants

relied "on the determinations made in the federal proceedings," and the judge considered those proceedings in granting the dismissal motions.

First, the motion judge found the State defendants were entitled to dismissal of the state court complaint based on absolute immunity. The judge explained the legislative history in enacting the NJCRA evidenced the Legislature's intent to provide New Jersey citizens with a state analogue to federal actions under 42 U.S.C. § 1983. Additionally, the judge found state law cases applied immunity under § 1983 to NJCRA claims.

The judge rejected plaintiff's argument that prosecutorial immunity for the State defendants was narrower under state law than under federal law. In adopting the reasoning in Ramanan I and Ramanan II, the judge, citing Fogel v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020), concluded the State defendants were immune from prosecution for claims under the NJCRA "because the underlying alleged facts [we]re 'intimately associated with the judicial phase of the criminal process.'" The judge agreed plaintiff's state court complaint related to the State defendants preparing for, and conducting, the grand jury proceedings.

Despite finding the State defendants were entitled to absolute immunity, the motion judge also considered whether the State defendants were entitled to qualified immunity in the event their conduct was investigatory and not

9

sufficiently associated with the judicial process. Applying the two-part test for qualified immunity announced in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), the judge agreed plaintiff had a right to be free from prosecution based on fabricated evidence. However, the judge concluded the alleged fabricated evidence purportedly contained in the Kickback Spreadsheet, Summary chart, and Shared Claims chart in support of probable cause to prosecute plaintiff was irrelevant because the statements made by Hayek and Awari to the State defendants, independent of these documents, were sufficient to support probable cause. Additionally, the judge found the dismissal of the criminal charges against plaintiff did "not establish that [the] creation of these documents and use of them during the investigation phase constitute[d] violations of a clearly established right not to be prosecuted based on fabricated evidence."

Because the judge dismissed plaintiff's constitutional claims, she concluded his conspiracy claim could not survive.

In dismissing plaintiff's claim for intentional infliction of emotional distress, the judge held the conduct giving rise to this claim occurred before or during the grand jury proceedings in May 2018. Because N.J.S.A. 59:8-8 requires the filing of a lawsuit against a public entity or public employee within two-years from the date a claim accrues, the judge determined the latest date

plaintiff could have filed suit against the State defendants was May 2020. Thus, she found plaintiff's September 2020 state court complaint time-barred.

The judge also rejected plaintiff's reliance on the discovery rule for his intentional infliction of emotional distress claim. Plaintiff argued he was unaware of his claims against the State defendants based on fabricated evidence until the criminal court judge dismissed the charges against him. The motion judge found plaintiff's complaint undermined this argument because the state court complaint "repeatedly assert[ed] that [plaintiff's] criminal defense counsel told the State [d]efendants, in 2017, that the various documents proffered were fabricated."

In dismissing plaintiff's claims against Hayek and Awari, the judge concluded they were not state actors acting under the color of state law. The judge found Hayek and Awari were not willful participants who conspired with the State defendants in prosecuting plaintiff. According to plaintiff's complaint, Hayek and Awari were coerced or relentlessly pressured by the State defendants to implicate plaintiff in a kickback scheme.

On appeal, plaintiff argues the judge erred in finding his NJCRA claims barred under the doctrines of absolute immunity or qualified immunity. He further asserts the judge erred in finding his intentional infliction of emotion

distress claim barred by the statute of limitation. As to the claims against Hayek and Awari, plaintiff contends the judge erred by concluding these defendants did not act under color of state law.

## I.

We review a trial court's order dismissing a complaint for failure to state a claim de novo. Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 69 (App. Div. 2023) (citing MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 311 (App. Div. 2018)). We "examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)). We apply "the same standard under Rule 4:6-2(e) that governed the motion court," Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014), which is whether the pleadings even "suggest[]" a basis for the requested relief. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). A complaint must be dismissed where "it has failed to articulate a legal basis entitling plaintiff to relief." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005)

12

(citing Camden Cnty. Energy Recovery Assocs. v. N.J. Dep't of Env't Prot., 320 N.J. Super. 59, 64 (App. Div. 1999)).

## II.

We first address plaintiff's assertion that the judge erred in dismissing the state court complaint by finding his NJCRA claims were subject to § 1983's absolute immunity. He argues the judge's holding was contrary to the NJCRA's text, legislative history, and judicial precedent. We disagree.

The NJCRA provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

"The NJCRA, which was modeled on 42 U.S.C. § 1983, created a private cause of action for violations of civil rights secured by the federal and New Jersey Constitutions." Cruz v. Camden Cnty. Police Dep't, 466 N.J. Super. 1, 9-10 (App. Div. 2021) (citing Tumpson v. Farina, 218 N.J. 450, 474 (2014);

Rezem Fam. Assocs. v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011)). Courts interpreting the NJCRA regularly examine federal cases when analyzing § 1983. Ibid.; see also Farina, 218 N.J. at 474 (holding cases applying "[§] 1983 may provide guidance in construing our Civil Rights Act").

Based on these legal principles, we are satisfied the NJCRA is analogous to § 1983, and the judge correctly considered federal case law in deciding whether the State defendants were entitled to absolute immunity.

III.

We next consider plaintiff's argument that, even if the NJCRA is interpreted the same as § 1983, the State defendants were not entitled to absolute immunity. Plaintiff asserts the actions of the State defendants were not intimately associated with the judicial process. According to plaintiff, the State defendants bore the burden of establishing entitlement to absolute immunity for each alleged wrongful act.

When a prosecutor performs actions that are "intimately associated with the judicial phase of the criminal process," absolute immunity applies "with full force." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). To determine whether absolute immunity applies, the court must "focus upon the functional nature of the activities rather than [the prosecutor's] status." Ibid.; see also Williams v.

14

Consovoy, 453 F.3d 173, 178 (3d Cir. 2006) (observing that courts focus on the purpose served by the acts for which immunity is sought in granting a prosecutor absolute immunity). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [their] role as an advocate for the State, are entitled to the protections of absolute immunity," including "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Courts have granted immunity from claims alleging a prosecutor "us[ed] false testimony in connection with [a] prosecution," Yarris v. County of Delaware, 465 F.3d 129, 137, 139 (3d Cir. 2006) (second alteration in original) (quoting Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992)); "so long as they did so while functioning in their prosecutorial capacity." Id. at 137. Additionally, the negotiation of a plea agreement by a prosecutor has been deemed to be closely associated with the criminal justice process. See Imbler, 424 U.S. at 430.

New Jersey courts have noted that "the United States Supreme Court has accorded absolute immunity to judges, prosecutors, and witnesses testifying during judicial proceedings." Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 580 (2006). The immunity is based on "concern that harassment by

15

unfounded litigation would cause a deflection of the prosecutor's energies from [their] public duties, and the possibility that [they] would shade [their] decisions instead of exercising the independence of judgement required by [the] public trust."  Id. at 581 (quoting Imbler, 424 U.S. at 423).  Our Supreme Court recognized absolute immunity "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," but nonetheless concluded "it serves the 'broader public interest' of ensuring that vexatious litigation not suppress 'the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.'"  Id. at 581-82 (alteration in original) (quoting Imbler, 424 U.S. at 427-28).

Similarly, "an investigator performing investigative work related to a criminal proceeding enjoys the same scope of immunity that a prosecutor performing such tasks would."  Murphy v. Middlesex Cnty., 361 F. Supp. 3d 376, 385 (D.N.J. 2019).  "When the functions of prosecutors and detectives are the same . . . the immunity that protects them is also the same."  Buckley, 509 U.S. at 276.

We reject plaintiff's argument that the allegedly false statements elicited by the State defendants were part of investigatory interviews and therefore not

subject to absolute immunity. "The mere invocation of the catch-word 'investigatory', however, cannot suffice . . . to forestall dismissal on immunity grounds." Rose v. Bartle, 871 F.2d 331, 345 (3d Cir. 1989) (explaining interviewing witnesses and soliciting alleged perjury prior to presenting grand jury testimony involves preparation necessary to present a case, entitling defendants to absolute immunity).

However, prosecutors are not entitled to absolute immunity if they "acted out of personal motive, with malicious intent, or in excess of [their] jurisdiction." Cashen v. Spann, 66 N.J. 541, 552 (1975). The "presumption that [prosecutors] act legally in the discharge of their public dut[ies] . . . is overcome by convincing proof that they acted in excess of and distinct from their required official duty for personal reasons of their own." Id. at 550 (quoting Earl v. Winne, 14 N.J. 119, 134 (1953)).

In evaluating whether the actions of the State defendants were entitled to absolute immunity, the judge considered the following facts. Beginning in 2015, the Office of the Attorney General's Commercial Bribery Task Force (CBTF) sought to pursue criminal charges against various doctors, including Hayek. Plaintiff alleged the investigation of Hayek led the CBTF to pursue plaintiff. According to plaintiff, Hayek, as part of a plea deal, "joined the State

[d]efendants' prosecution team, and became fully invested in their shared goal of manufacturing a case against as many doctors as possible."

At the time the State defendants first spoke with plaintiff and his criminal defense attorney, they were involved in an ongoing investigation into bribery and fraud allegations against several physicians and medical practices. At that time, the State defendants had charged several doctors, including Hayek, with various crimes. Plaintiff asserted Hayek joined the State defendants' scheme to obtain a favorable plea deal resolving the charges against him.

Similarly, plaintiff contended that Awari entered into a plea agreement with State defendants and agreed to cooperate by naming other doctors involved in an alleged kickback scheme. When Awari spoke to the State defendants, plaintiff was already indicted. The State defendants then relied on Awari's statements to obtain a superseding indictment against plaintiff.

Based on the plea colloquies proffered by Awari and Hayek, the State defendants had sufficient probable cause to believe multiple individuals were involved in an illegal kickback scheme. The State defendants, relying on the information gleaned from the plea hearings, proceeded to ascertain plaintiff's role, if any, in the kickback scheme and then determine whether to prosecute plaintiff.

Based on these facts, the judge found plaintiff's allegations against the State defendants were associated with the judicial phase of the criminal process—specifically, the grand jury process and criminal prosecution. The judge determined "the crux of the complaint concerned preparation for and conduct of the grand jury proceedings." Even accepting as true plaintiff's claims that the State defendants indicted him based on the purported solicitation of false testimony from Hayek and Awari, the judge found the State defendants' conduct was intimately connected to their advocacy or prosecutorial functions of the State defendants, entitling them to absolute immunity.

Moreover, nothing proffered in plaintiff's state court complaint suggests the State defendants exceeded their official duties for personal reasons or acted with malicious intent to preclude absolute immunity. Plaintiff offers only speculation and inferences to support his claim that the State defendants acted based on any improper motive. Under the specific facts in this case, we are satisfied the judge correctly concluded the State defendants were entitled to absolute immunity.

IV.

We turn to plaintiff's argument that the judge also erred in finding the State defendants were entitled to qualified immunity. Although the judge found

19

the State defendants entitled to absolute immunity, she also analyzed whether they would be entitled to qualified immunity.

In situations where absolute immunity may not apply, a governmental official may be entitled to qualified immunity "for discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Baskin v. Martinez, 243 N.J. 112, 127 (2020) (quoting Harlow, 457 U.S. at 818). In considering qualified immunity, the court must determine "(1) whether the evidence, viewed in the light most favorable to the plaintiff, establishes that the official violated the plaintiff's constitutional or statutory rights, and (2) whether the right allegedly violated was 'clearly established' at the time of the [defendant]'s actions." Id. at 128. "Qualified immunity can be asserted as a defense against actions brought under the [NJCRA] and federal causes of action for a violation of civil rights under 42 U.S.C. § 1983." Harris v. City of Newark, 250 N.J. 294, 300, 306 (2022) (explaining "[t]he interpretation given to parallel provisions of [42 U.S.C. § 1983] may provide guidance in construing" the NJCRA) (alteration in original).

We have recognized "probable cause as an absolute defense to NJCRA claims." Cruz, 466 N.J. Super. at 13. However, even absent probable cause, a defendant may still be entitled to a qualified immunity defense if he or she

"reasonably believed that probable cause existed." Wildoner v. Borough of Ramsey, 162 N.J. 375, 385 (2000).

Here, plaintiff contends the fabrication of evidence by the State defendants, including the Kickback Spreadsheet, Summary chart, and Shared Claims chart, violated his due process rights. However, plaintiff must demonstrate the alleged fabricated evidence was "so significant that it could have affected the outcome of the criminal case." Halsey v. Pfeiffer, 750 F.3d 273, 295 (3d Cir. 2014). "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Ibid.

Contrary to plaintiff's argument, the criminal judge did not dismiss the indictment based on the alleged fabricated evidence. Rather, the criminal judge concluded the State "misled the grand jurors regarding the law applicable to the charges" against plaintiff as the basis for dismissing the indictment. Nowhere in explaining his reasons for dismissing the indictment did the criminal judge refer to any allegedly fabricated evidence. Moreover, as we previously noted, the State defendants believed there was probable cause to prosecute plaintiff based on the statements proffered by Hayek and Awari.

21

On these facts, plaintiff failed to demonstrate any alleged fabricated evidence affected the outcome of the criminal case, negating the application of qualified immunity for the State defendants.

V.

We next consider plaintiff's claim that the judge erred in determining Awari and Hayek were not acting under color of law. He further asserts his state court complaint established Hayek and Awari willfully participated and cooperated with the State's prosecution of him in return for more lenient sentences on their own criminal charges.

The judge found plaintiff's claims failed to show Hayek or Awari acted willingly to conspire or engage in joint activity with the State defendants. Because Hayek and Awari were not willful participants in an alleged conspiracy, the judge concluded plaintiff failed to sustain his claims against them.

Statutory construction, particularly the NJCRA's "under color of law" language, is reviewed de novo. Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014) (citing Toll Bros. v. Twp. of Windsor, 173 N.J. 502, 549 (2002)). We previously noted that judicial interpretation of the NJCRA may be guided by federal case law interpretating § 1983. Under the NJCRA, a private action for violation of a person's substantive rights only lies against individuals acting under "color of

law." N.J.S.A. 10:6-2(c). A person may act under the color of law by exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Polk Cnty. v. Dodson, 454 U.S. 312, 317-18 (1981) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

A private person "who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998). Whether a private individual acted under the color of law is a fact-sensitive inquiry. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). It is not enough to show merely "some tenuous connection to state action. The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." Id. at 638-39 (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). A civil conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'"

Morgan v. Union Cnty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993) (quoting Rotermund v. U.S. Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973)). "The gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" Ibid. (citations omitted).

Here, plaintiff failed to allege Hayek and Awari were party to the alleged conspiracy. Counts one, two, and three of the state court complaint relate solely to the State defendants' conduct in allegedly fabricating evidence against plaintiff. In count two, asserting malicious prosecution, plaintiff alleged the State defendants acted "in concert with [d]efendants Hayek and Awari," to pursue criminal charges against plaintiff. Although count two mentioned Hayek and Awari, the claim in that count asserted the State defendants "acting alone and in concert, agreed to engage in and engaged in misconduct amounting to a malicious prosecution."

After according plaintiff all reasonable inferences based on the facts set forth in his state court complaint, the judge properly found neither Awari nor Hayek acted willingly in the prosecution of plaintiff. In his complaint, plaintiff stated the State defendants "coerced witnesses to give false, misleading, and dishonest testimony," which, combined with the alleged fabricated documents,

24

led to his indictment. Thus, relying on the facts alleged in plaintiff's complaint, the judge properly determined neither Hayek nor Awari acted willingly to conspire or engage in a joint activity with the State defendants and properly dismissed plaintiff's claims against them.

VI.

We also reject plaintiff's claim that the judge improperly dismissed his malicious prosecution claims premised on the false testimony Hayek and Awari proffered to the State defendants.

To prevail on a claim of malicious prosecution, a "plaintiff must prove (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 393-94 (2009) (quoting Helmy v. City of Jersey City, 178 N.J. 183, 190 (2003)). Each element must be established and "[u]pon failure to prove any one, the cause must fail." Id. at 394 (alteration in original) (quoting Lind v. Schmid, 67 N.J. 255, 262 (1975)). Only "'one who recklessly institutes criminal proceedings without any reasonable basis should be [held] responsible for such irresponsible action.'" Ibid. (quoting Lind, 67 N.J. at 262).

The second element, that the action was actuated by malice, may be inferred "from want of probable cause." Id. at 395 (quoting Hammill v. Mack Int'l Motor Truck Corp., 104 N.J.L. 551, 552 (E. & A. 1928)). Malice is defined as "the intentional doing of a wrongful act without just cause or excuse." Ibid. (quoting McFadden v. Lane, 71 N.J.L. 624, 630 (E. & A. 1905)).

In a malicious prosecution claim, only defendants who are "the 'proximate and efficient cause of maliciously putting the law in motion'" are held liable. Myrick v. Resorts Int'l Casino & Hotel, 319 N.J. Super. 556, 566 (App. Div. 1999) (quoting Seidel v. Greenberg, 108 N.J. Super. 248, 258 (Law Div. 1969)).

Here, plaintiff satisfied the first and fourth prongs supporting a claim for malicious prosecution—there were two indictments against plaintiff, and the superseding indictment was dismissed. However, plaintiff needed to demonstrate the prosecution was actuated by malice and there was an absence of probable cause to initiate a judicial proceeding. See Brunson, 199 N.J. at 394.

Here, Awari's and Hayek's statements were provided to the State defendants as part of advantageous plea deals. Their statements, in part, established probable cause for the State defendants to proceed with a case against plaintiff. However, at the time Hayek and Awari gave statements to the

State defendants, the State had already obtained indictments against other physicians. Plaintiff's indictments were among a series of pending indictments against doctors who allegedly participated in an illegal kickback scheme.

As we noted, the State defendants had ample evidence supporting probable cause to indict plaintiff. Therefore, plaintiff failed to meet his burden under the third prong in support of his malicious prosecution claim.

Nor did plaintiff offer any support to establish the prosecution was actuated by malice to satisfy the second prong. Rather, plaintiff's state court complaint contained a single conclusory statement that the State defendants "acted maliciously, willfully, and wantonly in violating [plaintiff]'s rights."

Because plaintiff failed to meet his burden under each of the prongs to establish a claim for malicious prosecution, we are satisfied the judge properly dismissed that claim.

VII.

We next consider plaintiff's claim that the judge erred in finding his intentional infliction of emotion distress claim time-barred. Plaintiff relies on McDonough v. Smith, 588 U.S. 109, 117 (2019), in arguing his claims accrued on May 23, 2019, when the criminal judge dismissed the indictments. He further

asserts he was entitled to the discovery rule for determining the accrual date for his intentional infliction of emotional distress claim. We disagree.

"Whether a cause of action is barred by a statute of limitations is a question of law," which we review de novo. Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016). We accord "'no deference to [the] trial judge's legal interpretations' in dismissing plaintiffs' complaint as time-barred." Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487-88 (App. Div. 2018) (alteration in original) (quoting Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 600 (App. Div. 2014)).

"[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988). An intentional infliction of emotional distress claim may be based on a "conspiracy to file false charges which were intended to, and could have[,] cost plaintiff his livelihood and severely impacted his career." Hill v. N.J. Dep't of Corr. Comm'r Fauver, 342 N.J. Super. 273, 297-98 (App. Div. 2001).

"Statutes of limitations, by their nature, are intended to compel plaintiffs to file their lawsuits within a prescribed time to allow defendants a fair

opportunity to respond and safeguard their interests." The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 443 (2017). Generally, a personal injury claim "shall be commenced within two years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14-2(a). "[A] cause of action is deemed to accrue when facts exist which authorize one party to maintain an action against another." Mullen v. Ippolito Corp., 428 N.J. Super. 85, 105 (App. Div. 2012) (quoting Marini v. Wanaque, 37 N.J. Super. 32, 38 (App. Div. 1955)). Because intentional infliction of emotional distress claims are personal injury claims, they are governed by the two-year statute of limitations. Fraser v. Bovino, 317 N.J. Super. 23, 34 (App. Div. 1998) (citing N.J.S.A. 2A:14-2).

The accrual date for a cause of action may be affected by the discovery rule. "The discovery rule provides that 'in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" Maldonado v. Leeds, 374 N.J. Super. 523, 530-31 (App. Div. 2005) (quoting Lopez v. Swyer, 62 N.J 267, 272 (1973)). "The standard is basically an objective one—whether plaintiff knew or should have known of sufficient facts to start the statute of limitations running." Ben Elazar

v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)). To toll the statute of limitations under the discovery rule, a plaintiff must also be aware that another party may be at fault for the injury:

> When a plaintiff knows he has "suffered an injury but [does] not know that it is attributable to the fault of another," the discovery rule tolls the date of accrual as to that unknown responsible party. And, when a plaintiff knows her injury "is the fault of another, but is reasonably unaware that a third party may also be responsible, the accrual clock does not begin ticking against the third party until the plaintiff has evidence that reveals [their] possible complicity."
>
> [Id. at 134-35 (alteration in original) (citation omitted) (quoting Caravaggio, 166 N.J. at 250).]

Plaintiff mistakenly relies on the "favorable termination" requirement under McDonough to assert he could not file an intentional infliction of emotional distress claim until the criminal judge dismissed the indictments. However, McDonough involved a § 1983 fabricated-evidence claim, which does not accrue until there is a favorable termination of the litigation. 588 U.S. at 119-20.

Here, plaintiff's intentional infliction of emotional distress claim is not premised on § 1983. Therefore, the favorable termination requirement, an element of the claims under § 1983, is inapplicable.

Plaintiff's state court complaint alleges all defendants "manipulated the truth during the pre-trial investigation, suborned perjury, protected witnesses providing false testimony, and flagrantly violated [his] constitutional rights." According to the complaint, on November 8, 2016, plaintiff's criminal attorney "formally told Keiffer, in no uncertain terms, that this alleged 'smoking gun'—the schedule allegedly showing the kickback from [plaintiff] to . . . Hayek—contained blatantly fabricated evidence and gross inaccuracies, and would never hold up in a court of law." Based on the facts stated in plaintiff's complaint, as early as 2016 plaintiff and his criminal counsel contended the State defendants' "blatantly fabricated evidence" and relied on "gross inaccuracies" in proceeding to indict plaintiff. Even assuming plaintiff did not realize his claim for intentional infliction of emotional distress in 2016, such a claim accrued no later than May 31, 2018, upon the return of the superseding indictment against plaintiff.

Further, even assuming the Attorney General's June 2018 news release, implicating plaintiff in an illegal kickback scheme, caused him to suffer distress and injury to his reputation, plaintiff's intentional infliction of emotional distress claim would still be time-barred because the complaint in Ramanan I was filed

31

on October 7, 2020, more than two years after publication of the Attorney General's June 2018 news release.

Having reviewed the record, we discern no error in the judge's finding plaintiff's intentional infliction of emotional distress claims was time-barred.

To the extent we have not addressed any of plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division